[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-14476

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 10, 2011
JOHN LEY
CLERK

D. C. Docket No. 09-00009-CR-T-26-MAP

UNITED STATES OF AMERICA,

                                          Plaintiff-Appellee,

versus

EVER BALBINO IBARGUEN-MOSQUERA,
EFRAIN CUERO PORTOCARRERO,
ISAIAS ESTUPINAN,

                                          Defendants-Appellants.

_____

Appeals from the United States District Court
for the Middle District of Florida

_____

(February 10, 2011)

Before DUBINA, Chief Judge, and ANDERSON, Circuit Judge.[*]

_____

[*] Although United States District Judge David H. Coar of the Northern District of Illinois sat by designation in this case, he retired as an Article III Judge in December 2010. Accordingly, we decide this case by a quorum. *See* 11th Cir. R. 34-2.

DUBINA, Chief Judge:

Appellants Ever Balbino Ibargüen-Mosquera ("Mosquera"), Efrain Cuero Portocarrero ("Portocarrero"), and Isaias Estupinan ("Estupinan") (collectively, "Appellants")[1] appeal their respective convictions for conspiring to violate and violating the Drug Trafficking Vessel Interdiction Act, 18 U.S.C. § 2285 (2010) (the "DTVIA").  Appellants challenge their convictions under the DTVIA on five grounds.  First, Appellants contend the DTVIA is unconstitutional on various grounds.  Second, Appellants argue that convicting them of both conspiracy to violate and a substantive violation of a single statute runs afoul of the Constitution's prohibition against double jeopardy.[2]  Third, Appellants argue the elements of statelessness and navigating through international waters, that the government had to prove, bear on culpability and thus are elements of the crime requiring proof beyond a reasonable doubt and proof of *mens rea*.  Fourth, Appellants argue even if this court finds that the district court applied the elements of the DTVIA correctly, there was insufficient evidence to find them guilty of

---

[1] There was a fourth crewmember-defendant named Johny Moriano Jiminez who did not appeal his conviction.  We use the term "Defendants" to refer to all of the crewmembers in the original case, including Jiminez, while the term "Appellants" refers to only those Defendants who join in this appeal.

[2] Portocarrero does not join the other Appellants' first two challenges.

violating the statute. Finally, Mosquera argues the district court erred when it excluded his expert witness's testimony.

After thorough review of the case and after hearing oral argument, we affirm the Appellants' convictions.

## I. Background.

A. Facts

On the morning of January 8, 2009, the United States Coast Guard Ship ALERT (the "ALERT") received a report from a Maritime Patrol Aircraft ("MPA") that an unmarked semi-submersible vessel (the "Vessel") was spotted in the Eastern Pacific Ocean, approximately 163 nautical-miles off the coast of Colombia. The Vessel was ocean-blue, 50 to 60 feet in length, and sat very low in the water. *See* App. A. The ALERT immediately dispatched to the location where the Vessel was originally spotted and arrived around 12 hours later.

Before the ALERT arrived, the MPA observed four men exit the cabin, don life-vests, inflate life-rafts, and jump into the water. The Defendants then waited near the Vessel, which sat dead in the water. Eventually they deflated the rafts and resumed travel.

The ALERT dispatched a helicopter to obtain infrared imagery of the Vessel when it neared the Vessel's location. For an hour the helicopter covertly observed

3

the Vessel and noted that, on two occasions, the Vessel stopped and a Defendant exited the forward hatch and scanned the area before returning below deck. After observation, the Helicopter illuminated the Vessel and announced its presence; at around this time the ALERT dispatched a rescue team on a rigid-hull inflatable boat (the "Rescue") to execute an interdiction.

Once the helicopter illuminated the Vessel, the Defendants calmly exited the hatch, donned life-jackets, and inflated the life-rafts for a second time. One Defendant returned below deck, at which time helicopter personnel observed a "flash of light" and "smoke or steam" emit from the Vessel. After the Defendants jumped into the water, the Vessel sank.

The Rescue arrived just as the boat was completely immersed. The Rescue crew escorted the Defendants back to the ALERT, where they were transferred to another U.S. Coast Guard ship, and eventually flown to Tampa, Florida. They arrived in Tampa on January 14, and were promptly arrested. Authorities interviewed each Defendant separately.

B. Course of Proceedings and Disposition in the District Court.

On January 13, 2009, a federal grand jury returned a two-count indictment charging Defendants with conspiring to operate or embark in a semi-submersible vessel in international waters, without nationality and with the intent to evade

4

detection, in violation of 18 U.S.C. § 2285, and operating, while aiding and abetting in the operation of, a semi-submersible vessel in international waters, without nationality and with the intent to evade detection, in violation of the DTVIA, 18 U.S.C. § 2285, and 18 U.S.C. § 2. Specifically, the DTVIA prohibits

> operat[ing] . . . or embark[ing] in any submersible vessel or semi-submersible vessel that is without nationality and that is navigating or has navigated into, through, or from waters beyond the outer limit of the territorial sea of a single country or a lateral limit of that country's territorial sea with an adjacent country, with the intent to evade detection. . . .

18 U.S.C. § 2285(a). Section 2, on the other hand, merely stands for the general principle that "[w]hoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal." Defendants entered a plea of not guilty and requested a bench trial. District Judge Lazzara, sitting as the fact-finder, found Defendants guilty of violating the DTVIA and sentenced each to 108 months' imprisonment and 3 years supervised release for each count to run concurrently. Appellants timely appealed.

## II. Discussion.

A. Appellants Challenges to the Constitutionality of the DTVIA.

This case requires us to address *de novo* four constitutional challenges to the DTVIA in evaluating whether the district court properly denied Appellants'

5

motions to dismiss their indictments.[3]  Specifically, Appellants argue the DTVIA is unconstitutional because: (1) its enactment exceeds Congress's power under Article I; (2) the phrases "semi-submersible vessel" and "intent to evade" are unconstitutionally vague; (3) it shifts the burden onto defendants to prove they are not engaging in drug trafficking and therefore denies them procedural due process; and (4) it is not rationally related to a legitimate government interest and therefore violates substantive due process.  For the reasons stated below, we conclude that none of Appellants' challenges have merit and thus affirm the district court's denial of the motions to dismiss.

1.  *Challenge that the DTVIA Exceeds Congressional Power.*

Article I, Section 8 of the Constitution grants Congress the power "[t]o define and punish Piracies and Felonies committed on the high Seas, and Offenses against the Law of Nations."  U.S. Const. art. I, § 8, cl. 10.  This clause is a broad grant of power to Congress to punish offenses outside of the United States.  Given that legislatures have plenary power to define the terms of criminal offenses, *Chicago, Burlington, & Quincy Ry. Co. v. United States*, 220 U.S. 559, 578–79, 31

---

[3] "Generally, we review a district court's denial of a motion to dismiss the indictment for abuse of discretion." *United States v. Di Pietro*, 615 F.3d 1369, 1370 n.1 (11th Cir. 2010) (citing *United States v. Palomino Garcia*, 606 F.3d 1317, 1322 (11th Cir. 2010)).  When a defendant challenges the constitutionality of a statute, however, the review is *de novo*.  *United States v. Spoerke*, 568 F.3d 1236, 1244 (11th Cir. 2009).

6

S. Ct. 612, 617 (1911), the question here is whether and in what circumstances Congress can grant extraterritorial jurisdiction over foreign defendants traveling outside of the United States' territorial waters.

The federal courts are in consensus on two basic restrictions to giving a law extraterritorial effect. First, Congress must state that it intends the law to have extraterritorial effect. *See, e.g., United States v. Flores*, 289 U.S. 137, 155, 53 S. Ct. 580, 584 (1933) ("[C]riminal statues of the United States are not by implication given extraterritorial effect."). That requirement is clearly met here. 18 U.S.C. § 2285(c) ("There is extraterritorial jurisdiction over an offense under this section. . . .").

Second, application of the law must comport with due process, meaning that application of the law "must not be arbitrary or fundamentally unfair." *United States v. Cardales*, 168 F.3d 548, 553 (1st Cir. 1999); *see also United States v. Howard-Arias*, 679 F.2d 363, 371 (4th Cir. 1982) (principles of international law may give way to an extraterritorial federal statute, but that statute must still comport with due process); *Leasco Data Processing Equip. Corp. v. Maxwell*, 468 F.2d 1326, 1334 (2d Cir. 1972), *abrogated on other grounds by Morrison v. Nat'l Australia Bank Ltd.*, __ U.S. __, 130 S. Ct. 2869 (2010) ("If Congress has expressly prescribed a rule with respect to conduct outside the United States, . . . a

United States court would be bound to follow the Congressional direction unless this would violate the due process clause of the Fifth Amendment.").  In determining whether an extraterritorial law comports with due process, appellate courts often consult international law principles such as the objective principle,[4] the protective principle,[5] or the territorial principle.[6]  *See, e.g.*, *United States v. Gonzalez,* 776 F.2d 931, 938–41 (11th Cir. 1985) (relying on the protective principle to reject defendants' arguments that applying the predecessor to the Maritime Drug Law Enforcement Act (the "MDLEA") to them violated due

---

[4] Under the objective principle, Congress may criminalize behavior that has a "nexus" to the United States.  Section 18 of the Restatement (Second) of Foreign Relations provides:

> A state has jurisdiction to prescribe a rule of law attaching legal consequences to conduct that occurs outside its territory and causes an effect within its territory, if either
>
> (a) the conduct and its effect are generally recognized as constituent elements of a crime or tort under the law of states that have reasonably developed legal systems, or
>
> (b)(i) the conduct and its effect are constituent elements of activity to which the rule applies; (ii) the effect within the territory is substantial; (iii) it occurs as a direct and foreseeable result of the conduct outside the territory; and (iv) the rule is not inconsistent with principles of justice generally recognized by states that have reasonably developed legal systems.

[5] Under the protective principle, Congress may criminalize behavior that may threaten the security of the United States.  Section 33 of the Restatement (Second) of Foreign Relations provides in pertinent part:

> (1) A state has jurisdiction to prescribe a rule of law attaching legal consequences to conduct outside its territory that threatens its security as a state or the operation of its governmental functions, *provided the conduct is generally recognized as a crime under the law of states that have reasonably developed legal systems.*  (emphasis added).

[6] Under the territorial principle, a "state has jurisdiction to prescribe and enforce a rule of law in the territory of another state to the extent provided by international agreement with the other state." *Cardales*, 168 F.3d at 553 (citation and internal quotation marks omitted).

process); *United States v. Marino-Garcia*, 679 F.2d 1373, 1380–83 (11th Cir. 1982) (noting these as exceptions to the general prohibition against criminalizing conduct by foreigners outside of the United States); *United States v. Suerte*, 291 F.3d 366, 370 (5th Cir. 2002); *Cardales*, 168 F.3d at 553. Appellants argue that DTVIA does not comport with due process because it fails to meet the nexus requirement (from the objective principle) or the requirement that the crime must be "condemned universally by law-abiding nations" (from the protective principle).

These international law principles, however, only apply to laws that govern the conduct of *flagged* vessels. In the past we have held that the objective, protective, and territorial principles "have no applicability in connection with stateless vessels" because such vessels are "international pariahs" that have "no internationally recognized right to navigate freely on the high seas." *Marino-Garcia*, 679 F.2d at 1382. Indeed, the law "places *no restrictions* upon a nation's right to subject stateless vessels to its jurisdiction." *Id.* (emphasis added); *see also United States v. Rendon*, 354 F.3d 1320, 1325 (11th Cir. 2003) ("Because stateless vessels do not fall within the veil of another sovereign's territorial protection, all nations can treat them as their own territory and subject them to their laws." (citation and internal quotation marks omitted)); *United States v.*

9

*Rubies*, 612 F.2d 397, 403 (5th Cir. 1979);[7] *United States v. Dominquez*, 604 F.2d 304, 307–09 (4th Cir. 1979). "We conclude, therefore, that international law permits any nation to subject stateless vessels on the high seas to its jurisdiction . . . . Jurisdiction exists solely as a consequence of the vessel's status as stateless." *Marino-Garcia*, 679 F.2d at 1383. Because extraterritorial jurisdiction is proper, we conclude that the enactment of the DTVIA does not offend the Due Process Clause of the Constitution.

　　2. *Void-for-Vagueness Challenge.*

Appellants also contend the DTVIA violates due process because the phrases "semi-submersible vessel" and "intent to evade" are vague and are thus subject to arbitrary enforcement. Except in First Amendment cases, a party " 'who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others.' " *Holder v. Humanitarian Law Project*, __ U.S. __, 130 S. Ct. 2705, 2719 (2010) (quoting *Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495, 102 S. Ct. 1186, 1191 (1982)). Therefore, we must determine whether these phrases are vague as applied to Appellants.

---

[7] In *Bonner v. City of Pritchard*, 661 F.2d 1206, 1207 & 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent the decisions of the Fifth Circuit rendered prior to October 1, 1981.

First, the phrase "semi-submersible" clearly covers the Vessel here and thus is not vague. The DTVIA defines"semi-submersible" as "any watercraft constructed or adapted to be capable of operating with most of its hull and bulk under the surface of the water." 46 U.S.C. § 70502(f)(1). Appellants argue that the terms "capable" and "most" are insufficiently clear to provide guidelines to law enforcement officials, and thus subject the DTVIA to arbitrary enforcement. Appellants' Vessel, however, clearly falls within the DTVIA's definition of semi-submersible under the plain English meaning of those terms.

"Capable" means "having attributes required for performance, . . . having . . . features permitting, [or] having general . . . ability" to do something. Webster's Ninth New Collegiate Dictionary 203 (1986). And "most" is a widely used term meaning "greatest amount." *Id*. at 774. The facts clearly show that this Vessel was operating only 4 to 12 inches above the water while stationary and was nearly completely underwater while moving. Since the Vessel was operating with the "greatest amount" of its bulk underwater at the time of detection, it clearly had "features permitting" it to do so. Therefore the phrase "semi-submersible vessel" covers the Vessel.

Likewise, the phrase "intent to evade" clearly covers Appellants' conduct and is not vague. Evade means "to elude by dexterity or stratagem." Webster's

11

Ninth New Collegiate Dictionary 429. Not only does the phrase "intent to evade" have a plain and ordinary meaning, the DTVIA defines that phrase by reference to another section of the code. In subsection (b), the DTVIA states that the presence of any of the indicia in 46 U.S.C. § 70507 (b)(1)(A), (E), (F), or (G), or (b)(4–6) is *prima facie* evidence of intent to evade detection.

Appellants' conduct is clearly covered under both the plain-English meaning of intent to evade and the relevant subsections. Defendants traveled in a Vessel that sat very low in the water, was painted ocean-blue, and had no head-lights or signals. Rather than using one of Colombia's major ports to get the Vessel to sea, Defendants surreptitiously guided it down a small estuary near the Ecuadorian coast. The Vessel bore no registration numbers or other markings. It traveled more slowly in the day than at night, and was configured to create very little wake when moving and no wake when still. The Vessel sank upon arrival of the Rescue. There is sufficient evidence here that "intent to evade" covers Appellants' conduct, and therefore that phrase is not vague as applied to them.

Appellants additionally argue that because one of the § 70507 indicia of "intent to evade" is "the configuration of the vessel to ride low in the water or present a low hull profile to avoid being detected visually or by radar"—essentially the definition of semi-submersible—the statute is circular and

thus vague. This argument, however, has nothing to do with vagueness. What Appellants are actually arguing is that this provision violates due process because it shifts the burden of persuasion on the issue of "intent to evade" from the government to Appellants.

Even as to this argument, however, Appellants fail. It is true that while Congress has the power to make the proof of one fact *prima facie* evidence of another, a statute may not "shift the burden of proof to the defendant by presuming [one element] upon proof of the other elements of the offense." *Patterson v. New York*, 432 U.S. 197, 215, 97 S. Ct. 2319, 2329 (1977); *see also United States v. Tinoco*, 304 F.3d 1088, 1107 (11th Cir. 2002) ("[O]nce the legislature has defined certain facts as elements of the offense, the legislature cannot shift the burden of persuasion as to those elements to the defendant, nor can the legislature create any presumptions as to those elements that negate the defendant's presumption of innocence."). But this provision does not shift the burden onto Appellants for at least two reasons. First, that the design of the vessel can serve as *prima facie* evidence of intent to evade merely means that such evidence is legally sufficient to find such an intent, and does not shift the burden of persuasion onto Appellants. The government is still charged with convincing the fact-finder that the defendant intended to evade detection.

Second, there is much more evidence here of "intent to evade" than merely the fact that the Vessel is semi-submersible: the Vessel's camouflage, its lack of headlights, its surreptitious route to the ocean, and its statelessness. The phrase "intent to evade detection" is therefore not vague, nor does it violate due process by presuming the element upon proof of another element of the crime.

3. *Procedural Due Process Challenge.*

Appellants argue that the DTVIA violates due process because it effectively redefines the offense of drug trafficking, eliminating the requirement of drug-possession. The Constitution prohibits presuming an ingredient of an offense upon proof of other facts, or shifting certain elements of an offense from an element to an affirmative defense. *Patterson*, 432 U.S. at 215. The Constitution would therefore prohibit redefining an offense so that the absence of an element of the original crime becomes an affirmative defense.

While it is probably true that the DTVIA was enacted in part to deal with the problem of losing drug evidence to the sinking of semi-submersibles, the DTVIA is not a drug-trafficking statute. In enacting the DTVIA, Congress chose to prohibit an entirely new evil, not to redefine an old one. Indeed, in discussing the enactment of the DTVIA, Congress considered that these vessels are useful not only in *drug* trafficking, but also in trafficking of weapons and people. 154 Cong.

14

Rec. H7,238–39 (daily ed. July 29, 2008) (statement of Rep. Steve Cohen); 154

Cong. Rec. H10,253 (daily ed. Sept. 27, 2008) (statement of Rep. Daniel

Lungren). Congress further found that other than these ills, these vessels have no

utilitarian value to society. 154 Cong. Rec. H10,252–54 (daily ed. Sept. 27, 2008)

(statement of Rep. Daniel Lungren). Based on these findings, Congress

determined to criminalize *not only* the underlying conduct—whatever that conduct

may be—but also traveling on the vessel itself.

Appellants specifically argue that the DTVIA places the burden on them to

prove that they are not trafficking drugs, but this is simply incorrect. Even if

Appellants proved that they were not trafficking drugs, they would still be guilty

of violating the DTVIA if the government proved, beyond a reasonable doubt, all

of the elements of the crime.[8] Because the DTVIA does not shift the burden of

proof to the accused as to any element of the crime, but rather creates a wholly

new crime that Congress is within its right to define, the Due Process Clause is not

violated.

4. *Substantive Due Process Challenge.*

---

[8] Nor do the DTVIA's affirmative defenses offer any support for Appellants' claim. As an affirmative defense, a defendant can show that the vessel was, at the time of the offense: (A) a U.S. vessel or a vessel lawfully registered in a foreign country; (B) "classed by and designed in accordance with the rules of a classification society;" (C) operating in a government licensed activity; or (D) "equipped with and using" some sort of vessel monitoring system. 18 U.S.C. § 2285(e). There is no defense if a defendant is found not to be trafficking in narcotics.

15

Appellants briefly argue that the DTVIA violates their substantive due process rights because it is not rationally related to any legitimate government interest. This is not a rigorous test and is generally easily met. We must simply determine whether "any set of facts may be reasonably conceived to justify legislation." *TRM, Inc. v. United States*, 52 F.3d 941, 945 (11th Cir. 1995) (citation and quotation marks omitted).

Congress has found that operating such vessels is a "serious international problem, facilitates transnational crime . . . and presents a specific threat to the safety of maritime navigation and the security of the United States." 46 U.S.C. § 70501. These types of ships have no utility other than the transport of drugs or weapons. 154 Cong. Rec. H10,252–54 (daily ed. Sept. 27, 2008) (statement of Rep. Daniel Lungren). They are capable of traveling long distances without refueling, are difficult to detect, and are easily disposable upon detection. *Id.*; 154 Cong. Rec. H7,238–39 (daily ed. July 29, 2008) (statement of Rep. Steve Cohen). Clearly the government's interest in eliminating the use of these types of vessels is legitimate, and the statute is narrowly tailored to suit that interest. Therefore Appellants' substantive due process claim lacks merit.

B. <u>Double Jeopardy Claim.</u>

16

Appellants also seek to invoke one of the three related protections afforded under the Fifth Amendment's double jeopardy clause, that of prohibiting multiple punishments for the same offense. This court reviews *de novo* the district court's denial of a motion to dismiss a charge on double jeopardy grounds. *United States v. Thurston*, 362 F.3d 1319, 1322 (11th Cir. 2004). In determining whether Appellants have been charged twice for the same offense, we apply the standard announced in *Blockburger v. United States*, which states that "where the same act or transaction constitutes a violation of *two distinct* statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not." 284 U.S. 299, 304, 52 S. Ct. 180, 182 (1932) (emphasis added).

Ordinarily, the court must only look to the elements of each crime to determine whether there are two offenses or one. *United States v. Hassoun*, 476 F.3d 1181, 1186 (11th Cir. 2007). Moreover, it has long been held that when the conspiracy and substantive charges derive from *separate statutes*, "the commission of the substantive offense and a conspiracy to commit it are separate and distinct offenses" because the charge for conspiracy requires an element not

required by the substantive offense: proof of an agreement. *Pinkerton v. United States,* 328 U.S. 640, 643, 66 S. Ct. 1180, 1182 (1946).[9]

We have previously held that where two counts are "charged under the same statutory provision," *Blockburger* may require an inquiry beyond the elements of the offense to determine whether there are separate crimes "in *substance as well as form.*" *Hassoun*, 476 F.3d at 1186. While the Government alleges that the "aiding and abetting" charge arises under both 18 U.S.C. §§ 2 & 2285, we have stated that § 2 "does not represent a distinct offense, but rather simply codifies an alternate theory of liability" that is inherent in every criminal charge. *Hassoun*, 476 F.3d at 1184 n.2. Therefore, the two charges both arise under the *same* statute, 18 U.S.C. § 2285.

Even looking to the substance, however, it is clear there are two offenses here. The conspiracy charge requires collaboration on the part of the Defendants to violate the statute while the substantive crime contains no such requirement. Each Defendant admitted to agreeing with another person to embark on this trip. Each carried identification and some amount of cash. In order to further their goal of operating this Vessel, Defendants took turns navigating it. In order to further

_____

[9] One of the only notable exceptions to this rule is where the substantive offense requires the agreement of two or more parties, an exception not applicable in this case. *United States v. Wayerski*, 624 F.3d 1342 (11th Cir. 2010).

18

their goal of evading detection, Defendants took turns scanning the horizon and looking for oncoming ships or planes. All of this shows that, above and beyond the elements of the DTVIA, the Defendants conspired to violate the DTVIA.

Appellants argue, however, that the *Blockburger* rule should not even apply here because Congress did not intend to allow for cumulative punishment. The *Blockburger* rule, as a rule of statutory construction, is used to determine whether Congress intended that two offenses be punished cumulatively. *Hassoun*, 476 F.3d at 1185 (citing *Albernaz v. United States*, 450 U.S. 333, 337, 101 S. Ct. 1137, 1141 (1981)). Therefore, even if the *Blockburger* test is met, Congress may state that it does not intend cumulative punishment. Given the Federal Government's long history of charging and convicting defendants of both conspiracies and substantive offenses, that the legislative history of DTVIA makes no mention of a desire to make each offense in that section exclusive, and that the DTVIA specifically provides for both a conspiracy charge and a substantive offense, we find this argument meritless.

C.  Statutory Construction Question.

Appellants argue that the phrases "navigating . . . through, or from waters beyond the outer limit of the territorial sea of a single country or a lateral limit of that country's territorial sea with an adjacent country" and "without nationality"

are elements of the crime which must be proved by the government beyond a reasonable doubt. Moreover, Appellants argue that the government must prove scienter—that is, Defendants *knowingly* acted with respect to these elements. This court reviews *de novo* issues of statutory construction. *United States v. Svete*, 556 F.3d 1157, 1161 (11th Cir. 2009) (en banc).

We begin questions of statutory construction with the language of the statute. *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 438, 119 S. Ct. 755, 760 (1999). The DTVIA prohibits

> operat[ing] . . . or embark[ing] in any submersible vessel or semi-submersible vessel that is without nationality and that is navigating or has navigated into, through, or from waters beyond the outer limit of the territorial sea of a single country or a lateral limit of that country's territorial sea with an adjacent country, with the intent to evade detection. . . .

18 U.S.C. § 2285(a). Moreover, subsection (g) of the DTVIA incorporates 46 U.S.C. § 70504 of the MDLEA, which states, "Jurisdiction of the United States with respect to a vessel subject to this chapter is not an element of the offense. Jurisdictional issues arising under this chapter are preliminary questions of law to be determined solely by the trial judge."[10] Under this provision, provisions of the

---

[10] We have previously upheld the constitutionality of removing these jurisdictional questions from the jury in the context of the MDLEA. *See Tinoco*, 304 F.3d at 1108.

20

DTVIA that are solely jurisdictional are not elements going to culpability that must be proved to the fact-finder. Moreover, " 'the existence of the fact that confers . . . jurisdiction need not be one in the mind of the actor at the time he perpetrates the act made criminal by the federal statute.' " *United States v. Campa*, 529 F.3d 980, 1007 (11th Cir. 2008) (quoting *United States v. Feola*, 420 U.S. 671, 677 n.9, 95 S. Ct. 1255, 1260 n.9 (1975)). "[K]nowledge of jurisdictional facts is not required in determining guilt . . . ." *Id.* (quoting *United States v. Muncy*, 526 F.2d 1261, 1264 (5th Cir. 1976)). Because Appellants concede that these elements bear at least partly on jurisdiction, we need only determine whether they are *solely* jurisdictional or bear simultaneously on jurisdiction and culpability.

First, we hold that the phrase "navigating . . . through, or from waters beyond the outer limit of the territorial sea of a single country or a lateral limit of that country's territorial sea with an adjacent country" is solely jurisdictional, and does not bear on culpability. The location of the commission of a crime is a jurisdictional fact in nearly all American laws. Indeed, crimes committed across state lines are often tried in federal courts and crimes committed in one state or intended to have an effect in a state are tried in that state's courts. It is difficult, if not impossible, to imagine how changing the location of a crime bears on the

21

culpability of the defendant and, indeed, Appellants were unable to present a single reason why location would ever bear on culpability. We find it incomprehensible that a defendant found 11 miles from the coast of Colombia would necessarily be less culpable than a defendant found 13 miles from the same coast. We conclude, then, that this phrase bears solely on the jurisdiction of the United States and need not be proven beyond a reasonable doubt nor proven with scienter.

We need not address, however, whether the "without nationality" element bears solely on jurisdiction or on jurisdiction and culpability. We conclude from the record that there is ample evidence that Appellants knew the Vessel was not registered in Colombia. The boat had no markings, registration papers, or flags, nor did it leave from any one of Colombia's major ports. Because any error in interpretation would be harmless, we need not address this issue further.

D. Sufficiency of the Evidence Claim.

Appellants argue that the evidence was insufficient to convict them of violating the DTVIA.[11] Primarily, Appellants argue that there is insufficient

---

[11] Appellants essentially use this argument to rehash the argument that the term "knowingly" should apply to "that is without nationality" and "navigating . . . through, or from waters beyond the outer limit of the territorial sea of a single country or a lateral limit of that country's territorial sea with an adjacent country." Given our earlier conclusion that the "international waters" element goes to jurisdiction and not culpability, and that there is ample evidence that the Defendants knew the Vessel was stateless, we will not address the sufficiency challenge as to those elements here.

evidence to prove the crime of conspiracy and the element of "intent to evade detection." This Court reviews *de novo* a challenge to the sufficiency of the evidence, "viewing the evidence in the light most favorable to the government." *United States v. Wright*, 392 F.3d 1269, 1273 (11th Cir. 2004) (citation and quotation marks omitted). The question is whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979).

After a thorough review of the record, we first conclude that the evidence presented was more than legally sufficient to find that the Appellants had an "intent to evade." Moreover, we conclude that there is sufficient evidence to prove that Appellants conspired to violate the DTVIA. To sustain a conviction for conspiracy, the government must prove (1) "the existence of an agreement to achieve an unlawful objective"; (2) "the defendant[s'] knowing and voluntary participation in the conspiracy"; and (3) "an overt act in furtherance of the conspiracy." *United States v. US Infrastructure, Inc.*, 576 F.3d 1195, 1203 (11th Cir. 2009). A conspiracy may, indeed usually must, be proven through circumstantial evidence. *United States v. Gupta*, 463 F.3d 1182, 1194 (11th Cir. 2006). The fact-finder's conclusion "should not be disturbed as long as it is

supported by the evidence." *United States v. Richardson*, 532 F.3d 1279, 1284 (11th Cir. 2008).

By their own testimony, three of the four Defendants were recruited for this journey by the same man. They traveled together to the site of the Vessel near the Ecuador border. Two of the Defendants admitted that they knew such Vessels were commonly used for smuggling drugs. Each Defendant navigated the Vessel during their trip pursuant to instructions received via radio. Each Defendant had a specific "part" to play in the journey. Each carried a plastic bag carrying nearly identical contents: some form of identification and a large amount of U.S. and Colombian currency. This is certainly sufficient evidence that the Appellants engaged in a conspiracy to violate the DTVIA to warrant upholding the verdict of the fact-finder.

E. Exclusion of Expert Testimony.

Mosquera argues that the district court erred in excluding expert testimony that he claims would have aided in his defense that he did not knowingly travel into international waters. This court reviews a district court's decision with respect to the admissibility of expert testimony for an abuse of discretion and can reverse the district court's ruling only if it is manifestly erroneous. *United States v. Frazier*, 387 F.3d 1244, 1258 (11th Cir. 2004) (en banc).

24

Mosquera's expert proposed to testify that, according to the Colombian Constitution, Colombia claims 200 nautical-miles off its coast as its territorial waters. Mosquera stipulated that he was not challenging the district court's determination that the phrase "beyond the outer limit of the territorial sea of a single country" refers to the 12 nautical-miles recognized by the United States. Instead, the testimony served to show that it would be reasonable for Mosquera to believe that, at the time of interdiction, he was not in international waters. This, he argues, goes to the mental state of "knowing" he was navigating in international waters. Because we conclude that the phrase "navigating in international waters" goes to jurisdiction rather than culpability, this testimony was irrelevant and the district court did not abuse its discretion in refusing to admit it.

### III. Conclusion.

Because we conclude that none of the Appellants' arguments has merit, we affirm their convictions.

**AFFIRMED.**

Appendix A

