[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-11222

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 23, 2011
JOHN LEY
CLERK

D.C. Docket No. 8:09-cr-00369-SCB-AEP-2

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

ISABELINO VALAREZO-OROBIO,

Defendant - Appellant.

_____

No. 10-11339

_____

D.C. Docket No. 8:09-cr-00369-SCB-AEP-4

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

GERARDO PALOMINO-MORENO,

Defendant - Appellant.

_____

Appeals from the United States District Court
for the Middle District of Florida

_____

(March 23, 2011)

Before MARCUS and ANDERSON, Circuit Judges, and ALBRITTON,[*] District Judge.

MARCUS, Circuit Judge:

In this consolidated appeal, Isabelino Valarezo-Orobio ("Valarezo") and Gerardo Palomino-Moreno ("Palomino") appeal their convictions for operating or embarking upon a semi-submersible vessel, and conspiracy to do the same, in violation of Title 18 U.S.C. § 2285(a)-(b). Valarezo also appeals his sentence for those convictions. The Appellants' constitutional challenges to their convictions are foreclosed by this Court's recently published decisions in United States v. Ibarguen-Mosquera, __ F.3d __, 2011 WL 447870 (11th Cir. Feb. 10, 2011), and United States v. Saac, __ F.3d __, 2011 WL 414995 (11th Cir. Feb. 9, 2011). We also hold that the district court did not err in applying an eight-level enhancement to Valarezo's sentence, pursuant to § 2X7.2(b)(1)(C) of the U.S. Sentencing Guidelines. We, therefore, affirm the district court's orders in all respects.

_____

[*] Honorable William H. Albritton, III, United States District Judge for the Middle District of Alabama, sitting by designation.

# I.

Both Appellants were crewmembers on a thirty-five foot, aqua blue, self-propelled, semi-submersible vessel ("SPSS") that was apprehended by the U.S. Coast Guard on July 27, 2009, while operating in international waters near Malpelo Island, Colombia. No flag nor markings of registry were visible on the vessel. The vessel, which Valarezo admitted was semi-submerged in order to evade detection, was traveling from Colombia to Ecuador to pick up cargo for a transportation trip. The four-person crew had embarked from Colombia in a speed boat and boarded the SPSS three and a half hours from shore on or around July 25, 2009. Valarezo was paid in advance 3,000,000 Colombian pesos, or approximately 1,525 U.S. dollars, for his participation. Valarezo had been recruited by the SPSS's captain to join the crew. Valarezo said it was his first time participating in an SPSS transportation trip.

While at sea on July 27, 2009, Valarezo spotted a maritime patrol helicopter and notified the SPSS's captain of its presence. The captain immediately ordered Valarezo to inflate a life raft and ordered Palomino to open four valves on the SPSS, causing the vessel to sink. By the time the Coast Guard reached the SPSS, the vessel had sunk completely and the entire crew had abandoned the vessel and boarded the life raft. All of the crewmembers claimed to be Colombian citizens.

3

All crewmembers except the captain were transported to the United States for prosecution.[1]

Valarezo and Palomino were each charged in a two-count indictment for conspiracy and substantive violations of the Drug Trafficking Vessel Interdiction Act of 2008 ("DTVIA"), 18 U.S.C. § 2285, which proscribes operating or embarking in a semi-submersible vessel without nationality in international waters with the intent to evade detection.[2]

Palomino moved to dismiss the indictment on the grounds that 18 U.S.C. § 2285 is unconstitutional; Valarezo joined Palomino's motion. On November 2, 2009, the district court entered an order denying the motion in its entirety. Both Valarezo and Palomino then pleaded guilty to the charges without any plea

---

[1] Although the captain, Lemos Wilson-Canga, was apprehended along with the crew, he apparently fell ill on the approximately ten-day journey to the United States and was released and returned to Colombia. However, at Valarezo's sentencing hearing, the government indicated that it had not given up on its efforts to apprehend Wilson-Canga, either by extraditing him or by catching him on another illegal vessel.

[2] The statute provides as follows:

> Whoever knowingly operates, or attempts or conspires to operate, by any means, or embarks in any submersible vessel or semi-submersible vessel that is without nationality and that is navigating or has navigated into, through, or from waters beyond the outer limit of the territorial sea of a single country or a lateral limit of that country's territorial sea with an adjacent country, with the intent to evade detection, shall be fined under this title, imprisoned not more than 15 years, or both.

18 U.S.C. § 2285(a).

4

agreement, preserving the right to appeal the district court's ruling about the statute's constitutionality. The court sentenced Valarezo to 108 months of imprisonment on each count, to run concurrently, followed by 36 months of supervised release. Palomino was sentenced to the same. Both Valarezo and Palomino timely appealed from the district court's order denying their motion to dismiss the indictment. Valarezo also appealed his sentence, challenging the eight-level enhancement to his offense level assessed under U.S.S.G. § 2X7.2(b)(1)(C) for the sinking of the vessel.

## II.

We review the constitutionality of a statute de novo. United States v. Spoerke, 568 F.3d 1236, 1244 (11th Cir. 2009).

Valarezo and Palomino challenge the constitutionality of Title 18 U.S.C. § 2285 on three grounds: first, they say that section 2285 exceeds the scope of Congress's power to regulate piracy and crimes on the high seas, pursuant to Article I, Section 8, clause 10 of the U.S. Constitution; second, they argue that the statute is unconstitutionally vague, because the statutory terms "semi-submersible" and "intent to evade" are inadequately defined; finally, they claim that the statute violates procedural due process by presuming that the defendant is guilty of drug trafficking solely upon evidence that he operated a semi-submersible vessel,

5

thereby impermissibly shifting the burden to the defendant to prove a legitimate purpose for his conduct.

Since the Appellants filed their appeals in this case, controlling precedent from this Court has resolved in the government's favor all of the Appellants' challenges to the constitutionality of 18 U.S.C. § 2285. See Ibarguen-Mosquera, 2011 WL 447870, at *3-*6; Saac, 2011 WL 414995, at *5-*6. Accordingly, we affirm the district court's order denying the motion to dismiss.

### III.

The only remaining issue is whether the district court erred in applying an eight-level enhancement to Valarezo's offense level for the sinking of the vessel, pursuant to U.S.S.G. § 2X7.2(b)(1)(C). We review the district court's legal interpretation of the sentencing guidelines de novo, and the district court's factual findings for clear error. United States v. Zaldivar, 615 F.3d 1346, 1350 (11th Cir. 2010); United States v. De La Cruz Suarez, 601 F.3d 1202, 1219 (11th Cir. 2010).

Valarezo's sentence was computed in accordance with § 2X7.2 of the U.S. Sentencing Commission Guidelines Manual -- the newly enacted guideline corresponding to 18 U.S.C. § 2285. See U.S.S.G., App. C Supp., amend. 728 (eff. Nov. 1, 2009). Section 2X7.2 provides for a base offense level of 26 for a conviction under 18 U.S.C. § 2285, and instructs the district court to increase that

6

figure by 8 levels if the specific offense characteristics involved "the sinking of the vessel." U.S.S.G. § 2X7.2(b)(1)(C).[3]

Unless otherwise specified, a convicted defendant's guideline range is determined on the basis of all "relevant conduct." De La Cruz Suarez, 601 F.3d at 1221; U.S.S.G. § 1B1.1 cmt. n.1(H). Relevant conduct includes not only the defendant's own acts in perpetration of the offense, but also "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity." U.S.S.G. § 1B1.3(a)(1). Whether a co-conspirator's act was reasonably foreseeable to the defendant so that it qualifies as relevant conduct is a

---

[3] The complete guideline reads as follows:

§ 2X7.2. Submersible and Semi-Submersible Vessels

    (a) Base Offense Level: 26

    (b) Specific Offense Characteristic

        (1) (Apply the greatest) If the offense involved--

            (A) a failure to heave to when directed by law enforcement officers, increase by 2 levels;

            (B) an attempt to sink the vessel, increase by 4 levels; or

            (C) the sinking of the vessel, increase by 8 levels.

U.S.S.G. § 2X7.2.

question of fact reviewed for clear error. United States v. Cover, 199 F.3d 1270, 1274 (11th Cir. 2000).

Valarezo received the eight-level enhancement under U.S.S.G. § 2X7.2(b)(1)(C) for the sinking of the vessel, leading to an adjusted offense level of 34. Finding no reason to deviate from the advisory guideline sentence, the district court sentenced Valarezo to 108 months in prison -- the lower limit of his guideline range.[4] Valarezo does not dispute that the vessel was in fact sunk, nor does he dispute that his co-conspirators sunk the vessel in furtherance of their jointly undertaken criminal activity. However, Valarezo argues that he should not have received the eight-level enhancement under subsection (b)(1)(C) because he did not scuttle the vessel himself, nor was it reasonably foreseeable that his co-conspirators would do so.

To begin with, it is clear that the district court necessarily made a factual finding that the scuttling of the vessel was reasonably foreseeable to Valarezo. The issue was properly framed and expressly presented to the district court as one of reasonable foreseeability. Valararezo filed a written objection to the probation officer's Presentence Investigation Report ("PSI"), which recommended the eight-

---

[4] Valarezo received a three-level adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1, resulting in a total offense level of 31. His criminal history category was I, yielding a guideline imprisonment range of 108 to 135 months.

level enhancement, on the express grounds that "it was [not] reasonably foreseeable that the Captain of the vessel, who was returned to Colombia and is not currently in custody, would sink the vessel leaving them to fend for themselves in the open sea." At the sentencing hearing, the district court noted that the only contested issue presented was Valarezo's objection that "it was not reasonably foreseeable to him that the captain of the vessel would order the sinking of the vessel." The district court framed its inquiry governing application of the eight-level sentencing enhancement under U.S.S.G. § 2X7.2(b)(1)(C) as "I assume what we need to do is apply foreseeability and whether or not he actually participated and so on." The district court took argument from both the prosecution and defense counsel specifically relating to whether the sinking of the vessel was reasonably foreseeable to Valarezo.

At the conclusion of the argument, the district court adopted the PSI, and expressly overruled Valarezo's objection to the eight-level increase, finding the enhancement "was appropriately assessed under the guidelines." In particular, the court stated, "[the guideline] does provide under 2X7.2 for an eight level increase for the sinking of the vessel, and this semi submersible was sunk, and if your part was taking care of the life boats, then that was a part, so I think it was

9

appropriately applied." The district court's determination necessarily entailed a factual finding that it was reasonably foreseeable the vessel would be scuttled.

This factual finding -- which need only be established by a preponderance of the evidence, United States v. Martinez, 584 F.3d 1022, 1027 (11th Cir. 2009) -- was not clearly erroneous. In the first place, at the time that Valarezo joined the conspiracy, it was well known that semi-submersible vessels are frequently scuttled when confronted by authorities. See Saac, 2011 WL 414995, at *6 (describing legislative history of DTVIA, including congressional recognition that semi-submersible vessels "pose a formidable security threat because they are difficult to detect and easy to scuttle or sink," thereby "facilitat[ing] the destruction of evidence and hinder[ing] prosecution of smuggling offenses"); see also Pub. L. No. 110-407, § 103(a), (b)(2)(D); 154 Cong. Rec. H10145-01, H10153 (daily ed. Sept. 27, 2008) (statement of Rep. LaTourette); 154 Cong. Rec. H7237-02, H7238-39 (daily ed. July 29, 2008) (statement of Rep. Cohen); 154 Cong. Rec. H7237-02, H7239-40 (daily ed. July 29, 2008) (statement of Rep. Lungren); 154 Cong. Rec. H7237-02, H7239 (daily ed. July 29, 2008) (statement of Rep. Poe); 154 Cong. Rec. S7575-01, S7576 (daily ed. July 28, 2008) (statement of then-Sen. Biden). Moreover, the undisputed facts show that Valarezo agreed by both word and conduct to participate as a crewmember on a

small, blue, semi-submersible vessel that he well knew was specifically designed to evade detection. Indeed, because Valarezo was aware that the vessel was sailing surreptitiously, and he accepted a large sum -- approximately $1,525 -- in consideration for his services, he also had reason to believe that the vessel was carrying or would carry illicit cargo. Valarezo also knew to be on the look-out for any signs of interception, and was himself the one who sighted the maritime patrol helicopter and alerted the captain to its presence. It was, therefore, reasonably foreseeable to Valarezo that when faced with the threat of interdiction, the captain would engage in evasive maneuvers to elude the authorities or take actions to destroy incriminating evidence -- including the vessel and its cargo -- in advance of capture. Moreover, the overall speed with which the scuttling of the vessel occurred further supports the inference that the entire crew was aware of a standing plan to sink the vessel if faced with apprehension by the authorities. The district court's determination was not clearly erroneous.

Accordingly, we affirm.

**AFFIRMED.**