[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 15, 2011
JOHN LEY
CLERK

No. 10-12589
Non-Argument Calendar
_____

D.C. Docket No. 0:09-cr-60243-JIC-2

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

TIMOTHY MYERS,

Defendant-Appellant.

_____

No. 10-12596
Non-Argument Calendar
_____

D.C. Docket No. 0:09-cr-60243-JIC-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ROBERT COX,

a.k.a. Michael Morris,
a.k.a. Top Cat,
a.k.a. TC,
a.k.a. Robnico Wilson,

Defendant-Appellant.

_____

Appeals from the United States District Court
for the Southern District of Florida

_____

(June 15, 2011)

Before HULL, MARTIN and ANDERSON, Circuit Judges.

PER CURIAM:

After a jury trial, Timothy Myers and Robert Cox appeal their convictions for two counts of enticing a minor to engage in a commercial sex act, in violation of 18 U.S.C. § 1591(a)(1), (b)(1). Cox also appeals his conviction for one count of conspiracy to entice a minor to engage in a commercial sex act, in violation of 18 U.S.C. §§ 1591(a)(1), (b)(1), 1594(c). After review, we affirm.

## I. BACKGROUND

A grand jury returned a superseding indictment against Timothy Myers, a.k.a. Quincy Myers, and Robert Cox. Count One alleged that, from about April 12, 2009 through about September 4, 2009, Defendants Myers and Cox conspired

to commit sex trafficking in children. Count Two alleged that from April 12, 2009 through about May 14, 2009, Defendants Myers and Cox caused T.T., a person under the age of 18, to commit commercial sex acts. Count Three alleged that Defendants Myers and Cox committed the same crime, but the victim was C.Z. and the conduct occurred between May 11, 2009 and May 14, 2009.

## A.     Government's Evidence at Trial

We review the testimony of the minor females – T.T and C.Z – at trial. In April 2009, T.T. was 17 years old. While waiting at a bus stop, T.T. was approached by a girl named Tender, who asked T.T. if she wanted to be a model and gave T.T. a business card. Tender offered T.T. a ride, and T.T. accepted. Defendant Cox drove Tender and T.T. to the mall. During the drive, Defendant Cox asked T.T. her age. T.T. told Cox she was 17.

Later, T.T. called the number on the business card. Defendant Cox answered. T.T. spoke with Tender and asked Tender whether it was okay for her (T.T.) to work given that she was not 18 and did not have a social security number. Tender responded that none of that mattered.

A couple of days later, T.T. called again and spoke to Defendant Cox about modeling. Cox met with T.T. and explained that the job was not actually

modeling, but was instead prostitution.  T.T. agreed to do it because she wanted to help out her family financially.

Defendant Cox brought T.T. to Defendant Myers's house.  While T.T. sat on the living room couch, Cox and Myers worked on the computer together.  When they finished, the defendants showed T.T. a picture and told her that her name was "Blanca" and that she was 20 years old.  Cox told T.T. that was what she should say when people called to come see her.

Defendant Cox then took T.T. to a Red Roof Inn.  On the way, Cox explained to T.T. how she should answer the phone and what prices to charge.  Once in the room, Cox explained how to answer the door and gave T.T. a phone to answer if anyone called.  When T.T. talked to a caller, Cox told her to hang up because she was not doing it right.  Cox was angry because he had spent money on the internet ad, yet T.T. had not turned any tricks or made any money.  Cox took T.T. home.

Several days later, Defendant Cox picked up T.T. and took her and Tender to a hotel.  On the way, Cox stopped at a Wal-Mart and purchased a cell phone.  At the hotel, Cox activated the phone and told T.T. to answer any calls.  Later, a man called and came to the hotel room.  Tender collected $80 from the man, and

then waited in the bathroom while T.T. had sex with him. Afterwards, Cox took T.T. home.

Several days after that, Defendant Cox again picked T.T. up and brought her to Defendant Myers's house. Myers and Cox once again posted an ad on the Internet. Cox gave T.T. a phone, which rang about fifteen minutes later. T.T. talked to the male caller, and then Cox drove T.T. to the man's house. Once there, T.T. had sex with the man for money, which T.T. gave to Cox.

Shortly thereafter, T.T and her friend, C.Z., ran away from home. The two girls stayed with a friend in a hotel for a few days until their money ran out. T.T. then called Defendant Cox, who picked up the girls. In the car, Cox asked C.Z. how old she was. C.Z. said she was 18 because that was what T.T. told her to say.

Defendant Cox took the girls to Defendant Myers's house, where Myers worked on an ad for "tricks," i.e., men, to call for C.Z. and T.T. "so [they] could sleep with guys and stuff."[1] While C.Z. was at Defendant Myers's house, Cox let her use the phone to call her mom at a particular time because he knew C.Z. was a runaway.

---

[1]The government introduced a copy of the internet ad Defendants Cox and Myers created on May 12, 2009 to prostitute T.T. and C.Z. The ad, posted on Craigslist, read:
> Hello, gentlemen, my name is Blanca, and the pleasure to please you is all mine. I'm a lady on the phone at all times, but a nympho behind closed doors. Xxx-xxx-6672, in call, Fort Lauderdale Airport area. Ask about my gorgeous Puerto Rican friend, Gabriella. Ask about my two-girl out call special. Don't be shy. I'm not.

After Defendants Cox and Myers posted the ad, Cox took T.T. and C.Z. to a hotel. Once they were inside the hotel room, the phone rang. T.T. answered and gave the caller prices for sex. Cox told C.Z. to learn how to answer the phone from T.T. Cox gave the girls condoms and left. When the man came to the hotel room, C.Z. waited by the pool while T.T. had sex with him.

Afterward, Defendant Cox returned and the three waited in the hotel room for more calls. After another call, two men arrived. Defendant Cox told the girls to tell the men about the special. The men indicated they wanted the special, so Cox sent both girls inside with condoms. The men gave T.T. the money, and the girls had sex with them. Afterward, T.T. gave Cox the money and they waited for more calls. At some point, Cox told the girls not to use the hotel phone because C.Z. was a runaway and he did not want anyone to know where they were.

William Powell, the customer service manager for Craigslist, also testified. Powell explained, among other things, that the data for its websites was stored on servers in Arizona and California and that Craigslist payments end up in the company accounts in California, where the company is based. Powell also identified the ad created by Defendants Myers and Cox on May 12, 2009 and paid for by a credit card in the name of Quincy Myers, Myers's alias.

**B.      District Court's Rulings**

The district court denied the defendants' motions for judgment of acquittal.

The district court refused to give the defendants' proposed jury instruction that a conviction under 18 U.S.C. § 1591(a) required knowledge that the prohibited conduct affected interstate commerce. Instead, the district court instructed the jury, inter alia, that "[i]t is not necessary for the government to prove that the defendant knew or intended that the recruiting, enticing, harboring, transporting, providing, or obtaining of a minor to engage in commercial sex acts would affect interstate or foreign commerce. It is only necessary that the natural consequences of such conduct would affect interstate or foreign commerce in some way."

The jury found Defendant Cox guilty on all three counts. The jury found Defendant Myers guilty on Counts Two and Three and acquitted Myers of the Count One conspiracy. As to Count Two, the jury found that Myers knew that T.T. was under 18. As to Count Three, the jury found that Myers was in reckless disregard of the fact that C.Z. was under 18.

At sentencing, the district court imposed three concurrent 180-month sentences as to Defendant Cox and two concurrent 121-month sentences as to Defendant Myers. The defendants appealed their convictions, but not their sentences.

7

## II.  DISCUSSION

### A.    Interstate Commerce Element of § 1591(a)(1) Offense

On appeal, the defendants argue that the district court erroneously instructed the jury that to convict the defendants of sex trafficking in children under § 1591(a)(1), the government was not required to prove that the defendants knew their sex trafficking of two minors affected interstate commerce.  As such, the defendants further contend that the government failed to produce evidence of the requisite knowledge at trial.[2]

Section 1591 provides punishment for "whoever knowingly . . . in or affecting interstate or foreign commerce . . . recruits, entices, harbors, transports, provides, obtains, or maintains by any means a person . . . knowing, or in reckless disregard of the fact, . . . that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act . . . ."  18 U.S.C. § 1591(a)(1).  In United States v. Evans, this Court concluded that the term "knowingly" does not modify the interstate commerce element in § 1591(a)(1).  476 F.3d 1176, 1180 n.2 (11th Cir. 2007).  In so doing, we noted that "'the existence of the fact that confers

---

[2]We review de novo issues of statutory construction.  United States v. Ibarguen-Mosquera, 634 F.3d 1370, 1383 (11th Cir. 2011).  Likewise, we review de novo the legal correctness of a jury instruction, but defer to the district court's phrasing absent an abuse of discretion.  United States v. Prather, 205 F.3d 1265, 1270 (11th Cir. 2000).

federal jurisdiction need not be one in the mind of the actor at the time he perpetrates the act made criminal by the federal statute.'" Id. (quoting United States v. Feola, 420 U.S. 671, 677 n.9, 95 S. Ct. 1255, 1260 n.9 (1975)). Thus, under Evans, the government is not required to prove beyond a reasonable doubt that a § 1591(a)(1) defendant knew that his actions affected interstate commerce, and the district court's jury instruction in this case was correct.

The defendants argue that Evans was abrogated by the Supreme Court's decision in Flores-Figueroa v. United States, ___ U.S. ___, 129 S. Ct. 1886 (2009). We disagree because Flores-Figueroa involves not only a different statute and crime, but also a different kind of element.[3] Flores-Figueroa held that an aggravated identity theft conviction under 18 U.S.C. § 1028A requires knowledge that the means of identification belonged to another person. See 129 S. Ct. at 1894. The element at issue in Flores-Figueroa was a substantive element of the crime. Flores-Figueroa did not address jurisdictional elements, such as interstate commerce. Indeed, one of the main authorities Flores-Figueroa relied upon,

---

[3]We are bound by our prior panel precedent "unless and until it is overruled or undermined to the point of abrogation by the Supreme Court or this Court sitting en banc." United States v. Archer, 531 F.3d 1347, 1352 (11th Cir. 2008). For a Supreme Court decision to overrule our prior panel precedent it "must be clearly on point." United States v. Blankenship, 382 F.3d 1110, 1141 (11th Cir. 2004) (quotation marks omitted). "Even if the reasoning of an intervening high court decision is at odds with a prior appellate court decision, that does not provide the appellate court with a basis for departing from its prior decision." United States v. Vega-Castillo, 540 F.3d 1235, 1237 (11th Cir. 2008).

9

United States v. X-Citement Video, Inc., 513 U.S. 64, 115 S. Ct. 464 (1994), explicitly acknowledged the difference in knowledge requirements between jurisdictional and non-jurisdictional elements. See 513 U.S. at 72 n.3, 115 S. Ct. at 469 n.3. Therefore, Flores-Figueroa in no way undermines, much less abrogates, Evans.

## B.     Sufficiency of the Evidence on Myers's Convictions

Defendant Myers argues that the government's evidence proved only that he "placed a couple of ads on Craigslist and Backpage" and was not sufficient to convict him of sex trafficking a minor under 18 U.S.C. § 1591(a)(1).[4]

To obtain a conviction under § 1591(a)(1), the government must show that: (1) a defendant knowingly recruited, enticed, harbored, transported, provided, obtained, or maintained by any means a person; (2) the defendant knew, or was in reckless disregard of the fact, that the person was under the age of 18 and would be caused to engage in a commercial sex act; and (3) the offense was in or affected interstate or foreign commerce. 18 U.S.C. § 1591(a)(1). To secure a conviction on an aiding and abetting theory, the government must show that the defendant

---

[4]We review de novo a challenge to the sufficiency of the evidence, viewing the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the government. Ibarguen-Mosquera, 634 F.3d at 1385. "The question is whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. (quotation marks omitted).

associated himself with the criminal venture in some way, participated in it as something he wished to bring about, and sought by his actions to make it succeed. United States v. Thompson, 610 F.3d 1335, 1338 (11th Cir. 2010).

According to the government's trial evidence, Defendant Cox brought two girls, T.T. and C.Z., to Defendant Myers's house, where Myers created and placed ads on the Internet to prostitute them. Although T.T. told Cox she was not 18, Defendants Cox and Myers told her that she should tell her "clients" she was 20. T.T. introduced her friend, C.Z., to Cox and Myers. Although C.Z. initially told Cox she was 18, the defendants knew C.Z. was a runaway. In fact, while at Myers's house, C.Z. used Myers's phone to call her mother. Moreover, the jury had an opportunity to view both girls when they testified at trial and could have reasonably relied upon their appearances to find that Myers recklessly disregarded the fact that C.Z. was under 18. Finally, the evidence of the payments to post the internet ads that were transferred to California and the Craigslist data stored in Arizona and California showed a nexus to interstate commerce.

Although Defendant Myers argues in conclusory fashion that he should not be held responsible for Cox's actions, there was ample evidence from which the jury could conclude that Myers, at a minimum, associated himself with Cox's criminal venture by posting the ads, thus indicating that he wished and sought for

11

the venture to succeed. In sum, the evidence sufficiently supported Myers's convictions on an aiding and abetting theory.

**AFFIRMED.**