[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-10058
Non-Argument Calendar
_____

D.C. Docket No. 6:14-cr-00096-ACC-GJK-3

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

JOSE CARMONA,
a.k.a. Hood,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(September 4, 2015)

Before HULL, ROSENBAUM and JILL PRYOR, Circuit Judges.

PER CURIAM:

Jose Carmona appeals his 150 month sentence that the district court imposed after a jury convicted him of conspiracy to commit sex trafficking of a minor, in violation of 18 U.S.C. § 1594(c), and sex trafficking of a minor, in violation of 18 U.S.C. §§ 1591(a) and 2.  For the reasons set forth below, we affirm.

## I.

A grand jury indicted Carmona and three co-defendants (Xavier Villanueva, Keith Romby, and Ashley Barnett) on one count of conspiracy to commit sex trafficking and one substantive count of sex trafficking.  Carmona pled not guilty and proceeded to a jury trial.

At trial, the prosecution introduced evidence that Carmona lived with Romby, Villanueva, and others in Orlando, Florida in a house the men called "the studio."  Barnett, who also lived in Orlando, befriended a 14-year old girl, victim G.E.  Barnett and G.E. began meeting unfamiliar men in hotels, where G.E. would use drugs and have sex with the men.  G.E. testified that she trusted Barnett, who had given her food and shelter, so when she ran away from home in January 2013, she went to Barnett.  Barnett took her to the studio where the two met Romby and Carmona and, together with the men, used methylenedioxymethamphetamine (or MDMA) and marijuana and consumed alcohol.

While at the studio but outside of G.E.'s earshot, Romby proposed to Barnett that they prostitute G.E. that night.  Barnett agreed, and she and Romby took G.E.

into another room in the studio, where Romby told G.E. to undress.  G.E., high on drugs and apparently unaware of the purpose of the request, complied.  Romby then took sexually suggestive photographs of her with his cell phone.  Carmona dropped in and out of the room while Romby was photographing G.E.  When he finished, Romby sent the photographs from his cell phone to his email account and then uploaded the photos to a website to solicit customers for sex with G.E.

After the photos were uploaded, Romby, Barnett, and Carmona took G.E. to a nearby hotel where they planned to have G.E. prostitute herself.  Before they sent her out to walk the street, Romby and Carmona each had sex with G.E., who was still high on MDMA, to show her that they were in charge of her.  When G.E. asked for more drugs, Carmona and Romby told her that she had already used a lot of MDMA and would have to "make that up," which G.E. took to mean she would have to prostitute herself and then give the proceeds to Carmona and Romby.  Doc. 213 at 144-45.

Around one or two in the morning, Romby sent G.E., still high on MDMA, to the street to prostitute herself.  After she had sex with a man in his car, she returned to Carmona and Romby.  The two told her she had done a good job and sent her back out to the street.  G.E. testified that she remembered nothing else until the next day.

3

The next day, G.E. woke up next to Carmona at the hotel. By this time, she testified, she had developed a crush on him. Shortly thereafter, she was returned to the studio where Romby arranged for her to have sex with several more men in exchange for rates he negotiated. Romby and Carmona kept G.E. high on MDMA throughout the day, and when she asked for more they told her she would have to "pull a trick so that they weren't . . . wasting their [MDMA]" on her. *Id.* at 152.

G.E. left the studio the next day. That evening, she checked her Facebook account online and noticed that she had received a message from Carmona. In the message, Carmona gave G.E. a phone number to call. She called, and Carmona answered and asked her to return to the studio. G.E. testified that she complied because she liked Carmona. When she returned to the studio, she took more MDMA, and Romby told her to have oral sex with co-defendant Villanueva. She complied and also had sex with several other men, then she returned home again.

The next day, Barnett called G.E. and asked her to come back to the studio. She offered to pick G.E. up and told G.E. that Carmona wanted to see her. G.E. agreed because she liked Carmona and wanted to see him. But when Barnett picked G.E. up, she did not drive to the studio. Instead, she took G.E. to Villanueva's house. There, Villanueva gave G.E. more MDMA, marijuana, and alcohol and then arranged for her prostitution.

4

Over the next several days, Villanueva arranged for G.E. to have sex with a number of men. G.E. gave Villanueva all of the money she earned, and Villanueva gave G.E. MDMA, which she continued to take. When at times Villanueva left the house, he would lock G.E. in a bathroom guarded by three women, one of whom was armed. Approximately eight days after her initial interaction with Romby and Carmona, the women guarding G.E. forced her out of the house. G.E. asked some people nearby for help, and they brought her to a gas station where she eventually called police.

A jury convicted Carmona on both counts. The probation office prepared a presentence investigation report ("PSI") in anticipation of Carmona's sentencing. The PSI calculated a base offense level of 30 under U.S.S.G. § 2G1.3(a)(2), which dictates offense levels for violations of § 1591. The PSI added a two-level enhancement pursuant to U.S.S.G. § 2G1.3(b)(2) because "a participant otherwise unduly influenced a minor to engage in prohibited sexual conduct" and a two-level enhancement under U.S.S.G. § 2G1.3(b)(3)(B) because the "offense involved the use of a computer or an interactive computer service" to solicit a minor to engage in prohibited sexual conduct. PSI at ¶¶ 36-37. With additional enhancements not at issue here, the PSI ultimately calculated Carmona's total offense level to be 40. With a criminal history category of III, Carmona faced a guidelines range of 360 months to life imprisonment.

5

At the sentencing hearing, Carmona objected to the undue influence and computer use enhancements, but the district court overruled both objections. After sustaining several objections that neither party challenges here, the district court arrived at a total offense level of 34 and a criminal history category of III, which yielded a guidelines range of 188 to 235 months' imprisonment. The district court sentenced Carmona to a below-guidelines sentence of 150 months' imprisonment (on each count, to run concurrently). This is Carmona's appeal.

## II.

We review the district court's findings of fact for clear error and its application of the Sentencing Guidelines to the facts *de novo*. *United States v. Martikainen*, 640 F.3d 1191, 1193 (11th Cir. 2011). Under the clear error standard, we "will not disturb a court's findings unless we are left with a definite and firm conviction that a mistake has been committed." *United States v. Clarke*, 562 F.3d 1158, 1165 (11th Cir. 2009) (internal quotation marks omitted).

## III.

Carmona first challenges the district court's application to his offense level of U.S.S.G. § 2G1.3(b)(2)(B), which provides for a two-level enhancement if "a participant otherwise unduly influenced a minor to engage in prohibited sexual conduct." He contends that the evidence adduced at trial demonstrated that it was

6

Romby who exercised influence over G.E., and that, unlike Romby, he was merely present rather than an active participant in G.E.'s prostitution.

When determining whether subsection (b)(2)(B) applies, the court should closely consider the facts of the case to determine whether a participant's influence over the minor compromised the voluntariness of the minor's behavior. U.S.S.G. § 2G1.3, comment (n.3(B)). Carmona contends that the only words G.E. testified that he uttered to her were "good job" after she walked the streets outside the hotel the first night of her prostitution. But that position ignores G.E.'s testimony about Carmona's conduct throughout the offense. G.E. testified that Carmona had sex with her, worked side-by-side with Romby during the first days of G.E.'s prostitution (including by telling her "good job" *and* "ask[ing] for more money"),[1] and then persuaded her to return to the house after she had left. These facts are sufficient to support the enhancement the district court imposed.

Even if we were to set aside whether Carmona himself exercised undue influence in persuading G.E. to engage in prostitution, the plain language of the commentary to the Sentencing Guidelines dictates that he can be held responsible for his co-conspirator Romby's conduct. Carmona has conceded that his co-conspirator Romby exercised undue influence over G.E. And the undue influence enhancement applies if "a participant" exercises undue influence over a victim.

---

[1] *See* Doc. 213 at 213.

U.S.S.G. § 2G1.3(b)(2)(B).  A "participant" within the meaning of the enhancement includes any "person who is criminally responsible for the commission of the offense, but need not have been convicted."  U.S.S.G. §§ 2G1.2, comment. (n.1), 3B1.1, comment. (n.1).  Romby, also responsible for the conspiracy to commit and commission of the sex trafficking of G.E., can therefore also engage in undue influence for which his co-conspirator Carmona may be held responsible.  Although the district court did not rule on these grounds, we may affirm on any basis supported by the record.  *See United States v. Hall*, 714 F.3d 1270, 1271 (11th Cir. 2013).   Thus, the district court did not err in imposing the enhancement under U.S.S.G. § 2G1.3(b)(2)(B).

Next, Carmona argues the district court erred in enhancing his guidelines offense level pursuant to U.S.S.G. § 2G1.3(b)(3)(B), which provides for a two-level enhancement "[i]f the offense involved the use of a computer or an interactive computer service."  The guidelines commentary states that "computer" has the meaning given in 18 U.S.C. § 1030(e)(1), which defines the term as "an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical, arithmetic, or storage functions . . . ."  U.S.S.G. § 2G1.3, comment. (n.1) (citing 18 U.S.C. § 1030(e)(1)).

Carmona contends that:  the government did not introduce evidence demonstrating that the cell phone Romby used to photograph and solicit customers

8

for G.E. was a computer, the enhancement was improper because it applies only when the device is used to communicate directly with the victim or her guardian, and there was no evidence that he used the computer or that it was foreseeable to him that one of his co-conspirators would.

Carmona's first argument is foreclosed by *United States v. Mathis*, in which we held that the use of a cell phone to call and send text messages constitutes the use of a computer as the term is defined in 18 U.S.C. § 1030(e)(1) (the statute that supplies the meaning of "computer" for purposes of the enhancement at issue). 767 F.3d 1264, 1283 (11th Cir. 2014), *cert. denied*, 135 S. Ct. 1448 (2015). Romby (and G.E., at Romby's direction) used his cell phone to communicate with potential customers; this plainly is sufficient under *Mathis*.

Carmona's second argument also is foreclosed by our precedent. Although the commentary to U.S.S.G. § 2G1.3 suggests that the enhancement "is intended to apply only to the use of a computer or interactive computer service to communicate directly with a minor" or guardian, comment. (n.4), we have held that this commentary is patently inconsistent with the plain language of the guideline and that the guideline's plain language controls. *See United States v. Hill*, 783 F.3d 842, 846 (11th Cir. 2015). In *Hill*, we affirmed the application of the enhancement to a defendant's use of a cell phone to place online ads offering minors for sex. *Id.*at 845-46. Romby's use of a cell phone to place online ads

9

offering G.E. for sex is materially similar to the defendant's use in *Hill*, by which we are bound.

Finally, Carmona's third argument lacks merit. The plain language of the enhancement demonstrates that Carmona's offense level can be enhanced whether he was the one using a computer or not, so long as "the offense involved" it. U.S.S.G. § 2G1.3(b)(3).[2] Indeed, "the base offense level" for a defendant involved in a conspiracy "shall be determined on the basis of . . . all reasonably foreseeable acts and omissions of others in furtherance of the" conspiracy "that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." *Id.* § 1B1.3(a)(1)(B). "Whether a co-conspirator's act was reasonably foreseeable to the defendant so that it qualifies as relevant conduct is a question of fact reviewed for clear error." *United States v. Valarezo-Orobio*, 635 F.3d 1261, 1264 (11th Cir. 2011). And the district court did not clearly err here. G.E. testified that Carmona was present when Romby photographed her with his cell phone. Although Carmona may not have been certain at that moment that the photographs would be used to promote G.E.'s prostitution, once he and Romby told G.E. that she would have to "make up" the cost of the MDMA they gave her by engaging in

---

[2] Although the district court overruled Carmona's objection to the enhancement on a different ground, concluding that he had used a cell phone as a computer, we can affirm because the record supports the court's application of the enhancement. *See Hall*, 714 F.3d at 1271.

10

prostitution, it became reasonably foreseeable that Romby would use the cell phone (and the photographs taken with it) to facilitate the prostitution.[3]  The district court was correct to hold Carmona responsible for Romby's conduct.  *See Smith v. United States*, 133 S. Ct. 714, 719 (2013) ("[A] defendant who has joined a conspiracy . . . becomes responsible for the acts of his co-conspirators in pursuit of their common plot." (internal quotation marks and citation omitted)).  The enhancement was therefore proper.

## IV.

For the reasons set forth above, we affirm Carmona's sentence.

**AFFIRMED.**

---

[3] Carmona's contention that any computer use was incidental and trivial is belied by the record.  G.E. testified that she and Romby on numerous occasions used Romby's cell phone to communicate with potential customers.

11