[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-11680
Non-Argument Calendar

_____

D.C. Docket No. 5:17-cr-00019-RBD-PRL-3

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

versus

TIMOTHEUS GERSOM REED,
AVERY LEANARD TUMER,

Defendant–Appellants.

_____

Appeals from the United States District Court
for the Middle District of Florida

_____

(June 19, 2019)

Before MARCUS, JORDAN and BRANCH, Circuit Judges.

PER CURIAM:

Avery Tumer and Timotheus Reed appeal their convictions for conspiracy to

commit carjacking and possession of a firearm in furtherance of a crime of violence.

Tumer also appeals his conviction for carjacking and the denial of his motion to

continue sentencing.  Several issues are raised on appeal: (1) both defendants argue that the district court erred in denying their separate motions for a judgment of acquittal of their convictions for conspiracy to commit carjacking because the government failed to produce any evidence that two or more people willfully agreed to carjack the victim; (2) Reed argues that the district court erred in denying his motion for a judgment of acquittal of his conviction for possession of a firearm in furtherance of a crime of violence; (3) Tumer argues that the district court erred in denying his motion for a judgment of acquittal of his conviction for carjacking; (4) both defendants argue that the court abused its discretion in admitting evidence of an uncharged conspiracy to rob another person; and (5) Tumer argues that the court abused its discretion by denying his motion to continue sentencing pending review of cases addressing the constitutionality of 18 U.S.C. § 924(c)(3)(B).  After thorough review, we affirm in part, reverse in part, and vacate and remand.

We review de novo whether sufficient evidence supports a conviction, viewing the record in the light most favorable to the government, and resolving all reasonable inferences in favor of the verdict.  United States v. Jiminez, 564 F.3d 1280, 1284 (11th Cir. 2009).  We review a district court's evidentiary rulings for abuse of discretion.  United States v. Dodds, 347 F.3d 893, 897 (11th Cir. 2003).  We also review for abuse of discretion a district court's denial of a motion to continue sentencing.  United States v. Edouard, 485 F.3d 1324, 1350 (11th Cir.

2

2007).  The defendant must show both that the denial was an abuse of discretion and produced substantial prejudice, and we focus on the reasons for the continuance offered to the trial court.  Id.

I.

First, we are persuaded by the defendants' argument that there was insufficient evidence to support their convictions for conspiracy to commit carjacking (Count One).  Evidence is sufficient to sustain a count of conviction if a reasonable trier of fact could find that the evidence established the defendant's guilt beyond a reasonable doubt.  Jiminez, 564 F.3d at 1284-85.  It is not enough for a defendant to put forth a reasonable hypothesis of innocence, since the issue is not whether a jury reasonably could have acquitted, but whether it reasonably could have found the defendant guilty.  Id. at 1285.  The test for sufficiency is the same regardless of whether the evidence is direct or circumstantial, but where the government relied on circumstantial evidence, "reasonable inferences, not mere speculation, must support the conviction."  United States v. Martin, 803 F.3d 581, 587 (11th Cir. 2015) (quotation omitted).  Credibility questions are the sole province of the jury.  United States v. Schmitz, 634 F.3d 1247, 1269 (11th Cir. 2011).  We assume the jury made all credibility choices in support of the verdict.  Jiminez, 564 F.3d at 1285.

To prove conspiracy under 18 U.S.C. § 371, the government must show: (1) the existence of an agreement to achieve an unlawful goal; (2) the defendant

3

willingly and knowingly participated in the conspiracy; and (3) the defendant committed an overt act in furtherance of the conspiracy. United States v. Ibarguen-Mosquera, 634 F.3d 1370, 1385 (11th Cir. 2011).  A conspiracy may be proven via circumstantial evidence, and the factfinding should not be disturbed if supported by the evidence.  Id.  The agreement need not have been formal, and proof that the defendant committed an act in furtherance of the conspiracy is the type of circumstantial evidence that can be used to prove the existence of an agreement. United States v. Moore, 525 F.3d 1033, 1040 (11th Cir. 2008).  A defendant may be found guilty of conspiracy if he knows of the "essential objective" of the conspiracy, even if he did not know all of the details of the conspiracy or only played a minor role within the scheme.  United States v. McNair, 605 F.3d 1152, 1195–96 (11th Cir. 2010).  The crux of the agreement element in a conspiracy case is that the government must prove a "meeting of the minds" to achieve the unlawful result. United States v. Arbane, 446 F.3d 1223, 1229 (11th Cir. 2006).

To prove carjacking under 18 U.S.C. § 2119, "the government must prove that the defendant (1) with intent to cause death or serious bodily harm (2) took a motor vehicle (3) that had been transported, shipped or received in interstate or foreign commerce (4) from the person or presence of another (5) by force and violence or intimidation."  United States v. Diaz, 248 F.3d 1065, 1096 (11th Cir. 2001) (quotation omitted).  The "intent" requirement is satisfied when the government

4

proves that the defendant intended to seriously harm or kill the vehicle's driver, at the moment the defendant demanded or took control of the vehicle, in order to steal the car.  Holloway v. United States, 526 U.S. 1, 12 (1999).

In Count One, co-conspirators Avery Tumer, Timotheous Reed, and Jonathan Lanier were charged with conspiracy to carjack victim Christopher Gist's vehicle. A thorough review of the record reveals, however, that while there was ample evidence that the three co-conspirators conspired to rob Gist of drugs and money, there was insufficient evidence from which a jury could have reasonably inferred that the three men conspired to take Gist's car.  For starters, there was no direct evidence of a conspiracy from Lanier, Tumer or Reed, since none of them testified at trial.  The only evidence the government presented in support of the carjacking conspiracy was the testimony of Amy Scott, Tumer's girlfriend.  Scott testified that on the night in question, she was driving Tumer, Reed and Lanier in her car, when Tumer used her phone to send a Facebook message to Gist, Scott's sometime sexual partner, to meet up.  There was a discussion in Scott's car prior to meeting Gist about whether he would have drugs and money on him because he sold marijuana, but no one said anything about taking Gist's car.  Scott, Tumer, Reed, and Lanier drove to a Citgo, met Gist, and drove down a nearby dirt road.  Scott then got out of her car and into Gist's; a few minutes later, the men approached Gist's car and removed Gist from it.  All three pointed their guns at Gist, they took his wallet, his phone and a

5

bag of marijuana from him, and Tumer struck Gist's head with his gun. The men then rifled through Gist's car doors and trunk. After robbing Gist, Tumer got into Gist's car, which surprised Scott because it "wasn't the plan to steal the car" and there was no way she could have predicted that Tumer would get into the car and steal it. At that point, Scott, Lanier, and Reed got into her car, and while Tumer was in Gist's car, they separately returned to the apartment where Scott and Tumer had been staying. Soon thereafter, the police arrived. Scott added that just before Gist's attack, Scott, Lanier, Reed, and Tumer had planned to rob another drug dealer, Chilly, of drugs and money at his house, but that no one mentioned taking a car from Chilly. When the plan to rob Chilly fell apart, the four turned to robbing Gist.

In other words, Scott's testimony made clear that the plan was to rob Gist, but that no one had suggested taking the car until Tumer decided to do so in the middle of the robbery. This testimony does not give rise to a reasonable inference that the three men had agreed to take the car, much less that Lanier or Reed knowingly and willingly aided in Tumer's theft of the vehicle. Ibarguen-Mosquera, 634 F.3d at 1385. The government says the jury could have inferred that the men made an agreement to take Gist's car in the two minutes after Scott left her car but before the men attacked Gist, but that inference would be purely speculative in light of the evidence. Martin, 803 F.3d at 587. Indeed, none of the men involved in the alleged conspiracy testified at trial. Not only did Scott deny that the men talked about a

carjacking before the attack, she testified that the men went through the car and trunk after the robbery, which they would not have needed to do if they had planned to take the car with them.  Scott also admitted that Gist was targeted because he was thought to have drugs and money, which was consistent with their previous plan to rob another individual at a nearby house of drugs and money, again without any mention of a car.  So while the government suggests that Scott simply may not have been aware of the plan, the government did not offer <u>any</u> affirmative evidence that a plan existed, and Scott was there while the plan to rob Gist was formed.

As for the government's claim that the concerted efforts of Lanier, Tumer, and Reed to rob Gist amounted to evidence of their intent to steal his car, the record shows that the men acted in concert in the robbery, even rifling through the car for something to steal, <u>until</u> Tumer decided to take the car, an action that surprised Scott.  Also, there was no evidence that Reed or Lanier helped further the carjacking once they knew about Tumer's plan to take the car.  Finally, Scott testified that she only incidentally followed Tumer from the scene of the attack, insofar as both she and Tumer happened to be headed back to the apartment where they were staying.  This testimony undermines any inference of a plan to commit carjacking from the fact that they all went back to the same apartment.

On this record, it would have been unreasonable for a jury to find that the men's coordinated efforts to rob Gist was circumstantial evidence that they had

conspired to commit carjacking.  Martin, 803 F.3d at 587.  While the evidence was sufficient to establish that the three men conspired to rob Gist and acted in furtherance of the "essential objective" of stealing Gist's money and drugs, they were not being tried for a conspiracy to commit robbery.  Instead, the three men were indicted and convicted of conspiring to steal Gist's vehicle.  Because the record does not show that there was an agreement to steal Gist's car, or that Reed knowingly or willingly committed an overt act in furtherance of that agreement, the evidence could not support a reasonable inference that such an agreement existed.  Accordingly, we reverse Tumer's and Reed's convictions as to Count One.[1]

## II.

Consequently, we also must reverse Reed's conviction in Count Five, for possession of a firearm in furtherance of the carjacking.  Pursuant to 18 U.S.C. § 924(c), it is unlawful for a person to use or carry a firearm during and in relation to any crime of violence or to possess a firearm in furtherance of that crime.  Diaz, 248

---

[1] We disagree with the government's claim that we should review Tumer's challenge to Count One for plain error.  As the record reveals, when moving for a judgment of acquittal, Tumer argued, among other things, that there was insufficient evidence to support his conviction on Count One because Scott had testified that she had not agreed to commit carjacking and was surprised when it occurred.  Those straightforward statements were sufficient to apprise the trial court of the particular grounds upon which appellate review would be sought, i.e., the inadequacy of the evidence regarding the existence of a conspiracy to commit carjacking as demonstrated by Scott's testimony.  Further, Tumer filed a timely motion for a judgment of acquittal following the jury's verdict, in which he argued that there was insufficient evidence of an agreement to steal Gist's car. See Fed. R. Crim. P. 29(c)(1), (3).  Thus, we've reviewed de novo the sufficiency of the evidence for Tumer's conviction as to Count One.  Jiminez, 564 F.3d at 1284.

F.3d at 1099.  Section 924(c) has two elements: (1) a drug deal or violent crime and (2) the use or carrying of a firearm in connection with that crime.  Rosemond v. United States, 572 U.S. 65, 71 (2014).  Count Five required the government to show that Reed used a firearm in furtherance of a violent crime, which in this case was the carjacking.  But, as we've already concluded, there was insufficient evidence to support Reed's conviction for conspiracy to commit carjacking.  There was also insufficient evidence to sustain a conviction for carjacking because no evidence has suggested that Reed took Gist's car or otherwise participated in its theft.

Nor, moreover, can we say that the evidence was sufficient to establish that he committed the carjacking under vicarious or aiding-and-abetting liability.[2] Pursuant to Pinkerton liability, a defendant may be vicariously liable for the substantive crimes committed by a co-conspirator during and in furtherance of the conspiracy, even if the defendant did not participate in those offenses or have knowledge of them.  United States v. Mothersill, 87 F.3d 1214, 1218 (11th Cir. 1996) (citing Pinkerton v. United States, 328 U.S. 640, 646-47 (1946)).  Notably, under Pinkerton, a defendant is liable only where the substantive crime was a reasonably foreseeable consequence of the conspiracy alleged in the indictment.  United States

---

[2] Notably, our conclusion that there was insufficient evidence to sustain a carjacking conviction for Reed is not dependent on the jury's acquittal of Reed on Count Two, the carjacking charge.  Jury verdicts are insulated from review on the basis that they are inconsistent, so long as sufficient evidence supports each finding of guilt.  United States v. Albury, 782 F.3d 1285, 1295 (11th Cir. 2015).  The problem here is not that the jury verdict was inconsistent, but that there was insufficient evidence in support the carjacking count.

v. Alvarez, 755 F.2d 830, 848 (11th Cir. 1985). So even though the evidence indicated that Reed was part of a conspiracy to rob Gist, Reed was not alleged to have been part of a conspiracy to commit robbery in the indictment, nor was he convicted of a robbery conspiracy. See United States v. Madden, 733 F.3d 1314, 1318 (11th Cir. 2013) (holding that a defendant can only be tried and convicted of crimes charged in the indictment). As a result, the existence of a conspiracy to commit robbery cannot sustain a conviction for carjacking under a Pinkerton theory of liability. In other words, because there was insufficient evidence to support the existence of a conspiracy to commit carjacking, the reasonably foreseeable carjacking cannot have been a consequence of that conspiracy.

Nor could we uphold a conviction for carjacking under a theory of aiding-and-abetting liability. A defendant is liable under a theory of aiding and abetting under 18 U.S.C. § 2 "if (and only if) he (1) takes an affirmative act in furtherance of that offense, (2) with the intent of facilitating the offense's commission." United States v. Sosa, 777 F.3d 1279, 1292 (11th Cir. 2015) (quotation omitted). "[A] person who actively participates in a criminal scheme knowing its extent and character intends that scheme's commission." Rosemond, 572 U.S. at 77. As the record reveals, there is no evidence that Reed knew of Tumer's plan to take Gist's car, much less that he acted affirmatively with the intent of facilitating the carjacking. Thus, a conviction for carjacking cannot be sustained under an aiding-and-abetting theory either.

10

In short, because there was insufficient evidence to sustain a carjacking conviction, Reed's conviction for possession of a firearm in furtherance of a violent felony, as charged in Count Five, must also be reversed.

### III.

We do conclude, however, the district court did not err in denying Tumer's motion for a judgment of acquittal on the carjacking count as to Count Two, because the record contains sufficient evidence from which a reasonable jury could have found that he possessed the intent to seriously injure or kill to facilitate the theft of Gist's car. Tumer does not dispute that he stole a vehicle that had been in interstate commerce from Gist while holding him at gunpoint; he argues, instead, that there was insufficient evidence that he possessed the requisite intent at the relevant times. We disagree.

As the record reveals, both Gist and Scott testified that Gist was pulled from his car and robbed, and Scott testified that Tumer then struck Gist in the head with his gun before taking Gist's car. Based on Scott's testimony, the robbery was effectively complete before Tumer struck Gist and took the car, and there is no indication that there was any meaningful delay between Tumer's attack on Gist and the carjacking. Thus, a reasonable jury could have inferred that Tumer intended to harm Gist to facilitate the carjacking at the moment he struck him with the gun, thereby satisfying the intent requirement for carjacking. Holloway, 526 U.S. at 12.

11

Accordingly, we affirm Tumer's conviction on Count Two. Jiminez, 564 F.3d at 1284–85; Diaz, 248 F.3d at 1096.

## IV.

We also find no merit to the defendants' argument that the district court abused its discretion by admitting evidence of an uncharged conspiracy, about which Amy Scott testified. Rule 404(b) prohibits admission of a person's prior bad acts as proof of a person's character in order to show that the person acted in accordance with that character. Fed. R. Evid. 404(b). However, Rule 404(b) allows admission of such acts for other purposes, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. Id. In determining whether evidence should be admitted under Rule 404(b), courts apply the following three-part test: (1) the evidence must be relevant to an issue other than the defendant's character; (2) the evidence's probative value must not be substantially outweighed by its prejudicial effect; and, (3) the government must offer sufficient proof so the jury could find that the defendant committed that act. United States v. LaFond, 783 F.3d 1216, 1222 (11th Cir. 2015). Exclusion under Rule 403 -- which allows a court to exclude relevant evidence "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence" -- "is an extraordinary remedy which the district court should invoke

12

sparingly, and the balance should be struck in favor of admissibility." United States v. Alfaro-Moncada, 607 F.3d 720, 734 (11th Cir. 2010) (quotation omitted). Notably, in reviewing evidentiary rulings, we will not reverse a conviction if sufficient evidence uninfected by any error supports the verdict, and the error did not substantially influence the outcome of the case. United States v. Langford, 647 F.3d 1309, 1323 (11th Cir. 2011).

Here, Tumer challenges the admission of evidence known as the "Chilly evidence" -- evidence, mostly introduced through Amy Scott's testimony, that the defendants originally planned to rob a man named Chilly, but abandoned that plan and shortly thereafter decided to rob Gist, using the guns, masks, and bandanas originally intended for use in Chilly's robbery.[3] As the record reveals, however, even if this evidence was erroneously admitted (and we do not believe that it was), the district court did not abuse its discretion because sufficient evidence uninfected by any error supports the verdict as to Counts Two and Three, and, moreover, no error substantially influenced the outcome of the case. Langford, 647 F.3d at 1323. Among other things, Scott and Gist provided testimony (unrelated to Chilly) that established that Tumer struck Gist on the head with a gun just before driving off in

---

[3] While Reed raised this argument as well, we need not consider his argument because we've concluded that, even with this evidence, Reed's convictions as to Counts One and Five must be reversed. For the same reason, will we not consider this argument as to Tumer's Count One conviction. We only consider it as to Tumer's Counts Two (carjacking) and Count Three (possession of a firearm in furtherance of a crime of violence) convictions.

the car, which supports the finding that Tumer possessed the requisite intent to seriously injure or kill Gist shortly before taking the car, as required by Count Two. This testimony also expressly supports the finding that Tumer used the firearm in furtherance of a crime of violence, as required by Count Three. As for Tumer's argument that the jury may have improperly considered the Chilly evidence as proof of his "bad character," the court instructed the jury that it was only to consider that evidence with respect to his intent, motive, opportunity, or plan, or to show the absence of an accident or mistake, and the jury is presumed to have followed those instructions. Ramirez, 426 F.3d at 1352. Accordingly, we affirm Tumer's convictions as to Count Two and Three.

## IV.

Finally, we find no merit to Tumer's claim that the court abused its discretion by denying his motion to continue sentencing. District courts possess broad discretion to manage their dockets. United States v. McCutcheon, 86 F.3d 187, 190 (11th Cir. 1996). District courts are generally required to impose a sentence without unnecessary delay but may change any time limits on a showing of good cause. Fed. R. Crim. P. 32(b)(1)–(2).

Pursuant to 18 U.S.C. § 924(c), it is unlawful for a person to use or carry a firearm during and in relation to any crime of violence or to possess a firearm in furtherance of that crime. Diaz, 248 F.3d at 1099. Section 924(c)(3) defines a

14

"crime of violence" as any felony offense that "(A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or (B) . . . by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. § 924(c)(3)(A)–(B). Subsection (A) is often referred to as the use-of-force clause, or the elements clause, while Subsection (B) is often referred to as the residual clause. In re Smith, 829 F.3d 1276, 1278–79 (11th Cir. 2016). In In re Smith, we held that carjacking constituted a crime of violence under § 924(c)(3)(A), the use-of-force clause. Id. at 1280. In Ovalles v. United States, 905 F.3d 1200 (11th Cir. 2018), on remand after the en banc, we upheld In re Smith's conclusion that carjacking is a "crime of violence" under § 924(c)(3)(A)'s use-of-force clause. Id. at 1304.

For the purposes of sentencing under the Armed Career Criminal Act, "violent felony" means, among other things, any crime punishable by a term of imprisonment exceeding one year that "has as an element the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B)(i). In Stokeling v. United States, 139 S. Ct. 544 (2019), the Supreme Court noted that "physical force" under § 924(e)(2)(B)(i) included "force capable of causing physical pain or injury." 139 S. Ct. at 553. The Supreme Court held that "physical force" or

15

"force capable of causing physical pain or injury" included the level of force necessary to overcome a victim's resistance. Id. at 555.

Here, Tumer has not shown that he was substantially prejudiced by the denial of his motion to continue. We already held, in In re Smith, 829 F.3d at 1280, that carjacking constitutes a crime of violence under § 924(c)(3)(A), the elements clause. Ovalles -- which, on remand, upheld In re Smith -- would not have affected his sentencing. Nor would Stokeling, since nothing in that decision, which dealt with § 924(e)(2)(B), alters our prior holding that carjacking constitutes a crime of violence under § 924(c)(3)(A). Thus, Tumer cannot show that he was prejudiced because he was engaged in a "crime of violence" under § 924(c)(3)(A), regardless of the outcome of Ovalles or Stokeling.

We recognize that the Supreme Court recently granted certiorari in United States v. Davis, 903 F.3d 483 (5th Cir. 2018), cert. granted, (U.S. Jan. 4, 2019) (No. 18–431), on the issue of the constitutionality of the definition of "crime of violence" under § 924(c)(3)(B), the residual clause. But, regardless, the district court did not abuse its discretion in denying Tumer's motion to continue. As we've said, our binding precedent holds that carjacking is a crime of violence under § 924(c)(3)(A), the elements clause, so Davis -- which involves the residual clause in § 924(c)(3)(B) -- would not affect his sentence.[4] In any event, the district court was required to

---

[4] For this same reason, we DENY Tumer's motion for a stay of appellate proceedings

16

promptly sentence Tumer.  Fed. R. Crim. P. 32(b)(1).  The court also possessed broad discretion to manage its docket, and Tumer has not cited to any law indicating that the court's failure to await the outcome of potentially informative cases -- which could have delayed his sentencing for years -- amounted to an abuse of that discretion.  McCutcheon, 86 F.3d at 190.  Accordingly, Tumer has not shown that the court abused its discretion in denying his motion to continue his sentence.  Edouard, 485 F.3d at 1350.

In conclusion, we reverse Tumer's and Reed's convictions for conspiracy to commit carjacking and Reed's conviction for possession of a firearm in furtherance of a crime of violence; we affirm Tumer's convictions for carjacking and possession of a firearm in furtherance of a crime of violence and the denial of his motion to continue sentencing; we note that Tumer has not challenged on appeal his conviction for being a felon in possession of a firearm; and we remand for further proceedings.  See United States v. Fowler, 749 F.3d 1010, 1016 (11th Cir. 2014) ("On direct appeal, we have routinely, without hesitation and as a matter of course, vacated entire sentences and remanded for resentencing on all surviving counts after vacating a conviction or sentence on some, but not all, of the counts.").

**REVERSED IN PART, AFFIRMED IN PART, AND VACATED AND REMANDED.**

---

pending the Supreme Court's decision in Davis.

17