[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-10735
Non-Argument Calendar

_____

D.C. Docket No. 5:17-cr-00019-JDW-PRL-2

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

versus

JONATHAN KYLE LANIER,

Defendant–Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(June 20, 2019)

Before MARCUS, JORDAN and BRANCH, Circuit Judges.

PER CURIAM:

Jonathan Lanier appeals his convictions for conspiracy to commit carjacking, carjacking, possession of a firearm in furtherance of a crime of violence, and possession of a firearm by a convicted felon. On appeal, Lanier argues that: (1) the

district court abused its discretion by admitting evidence concerning his alleged gang membership because gang membership was not relevant, it was improper character evidence, and its probative value was substantially outweighed by the threat of undue prejudice; (2) there was insufficient evidence to establish that he was guilty of any of his four counts of conviction; and (3) the district court erred in instructing the jury on Pinkerton[1] co-conspirator liability because the carjacking was not reasonably foreseeable.  After careful review, we affirm in part, reverse in part, and vacate and remand.

We review a district court's evidentiary rulings for abuse of discretion.  United States v. Dodds, 347 F.3d 893, 897 (11th Cir. 2003).  We review de novo whether sufficient evidence supports a conviction, viewing the record in the light most favorable to the government, and resolving all reasonable inferences in favor of the verdict.  United States v. Jiminez, 564 F.3d 1280, 1284 (11th Cir. 2009).  When challenging an instruction on a ground not raised in district court, a defendant must show plain error.  United States v. Hansen, 262 F.3d 1217, 1248 (11th Cir. 2001).  To establish plain error, he must show (1) an error, (2) that is plain, and (3) that affected his substantial rights.  United States v. Turner, 474 F.3d 1265, 1276 (11th Cir. 2007).  If the defendant satisfies these conditions, we may exercise our

---

[1] Pinkerton v. United States, 328 U.S. 640 (1946).

2

discretion to recognize the error only if it seriously affects the fairness, integrity, or public reputation of judicial proceedings.  Id.

First, we are unpersuaded by Lanier's argument that the district court abused its discretion by admitting evidence concerning his alleged gang membership.  Rule 404(b) prohibits admission of a person's prior bad acts as proof of a person's character in order to show that the person acted in accordance with that character.  Fed. R. Evid. 404(b).  However, Rule 404(b) allows admission of such acts for other purposes, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.  Id.  In determining whether evidence should be admitted under Rule 404(b), courts apply the following three-part test: (1) the evidence must be relevant to an issue other than the defendant's character; (2) the evidence's probative value must not be substantially outweighed by its prejudicial effect; and, (3) the government must offer sufficient proof so the jury could find that the defendant committed that act.  United States v. LaFond, 783 F.3d 1216, 1222 (11th Cir. 2015).

Rule 401 provides that evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."  Fed. R. Evid. 401.  But Rule 403 permits a court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the

3

jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Exclusion under Rule 403 "is an extraordinary remedy which the district court should invoke sparingly, and the balance should be struck in favor of admissibility." United States v. Alfaro-Moncada, 607 F.3d 720, 734 (11th Cir. 2010) (quotation omitted). In reviewing whether evidence should have been excluded under Rule 403, we look at the evidence in the light most favorable to its admission, "maximizing its probative value and minimizing its undue prejudicial impact." Id. (quotation omitted). We also note that the jury is presumed to have followed instructions given to it by the district court. United States v. Ramirez, 426 F.3d 1344, 1352 (11th Cir. 2005).

Here, the district court did not abuse its discretion by admitting evidence about Lanier's gang membership under Rule 404(b). Although Lanier argues that there was no need to introduce the evidence -- insofar as he did not dispute that he was at the scene of the crime and was involved in the robbery -- the evidence of shared gang membership was probative of whether Lanier and co-conspirators Avery Tumer and Timotheous Reed acted with the unified intent, knowledge, and motive to steal from the victim. Alfaro-Moncada, 607 F.3d at 734; LaFond, 783 F.3d at 1222. It is reasonable to assume that shared gang membership made it more likely that the men would have been together on the night of the attack and knowingly acted with a unified purpose. Further, while evidence of gang membership may be

4

prejudicial, Lanier has not shown that the introduction of the evidence affected his substantial rights, particularly in light of the court's limiting instruction. The court expressly told the jury it could only consider the evidence for the purpose of determining whether Lanier acted with the knowledge, intent, and motive that would be associated with the charges against him. The jury is presumed to have followed that instruction, thereby minimizing any potential prejudicial effect. Ramirez, 426 F.3d at 1352.

As for whether the government introduced sufficient evidence that Lanier, Tumer, and Reed were gang members, it presented more than enough evidence. This evidence included: photos of Tumer's and Reed's gang-related tattoos; photos wherein Lanier, Reed, and Tumer wore or displayed black bandannas associated with gang membership; the testimony of an acquaintance, Lacosha Wright, that Tumer, Reed, and Lanier described themselves as "G," which stands for "gangster"; the testimony of Tumer's girlfriend, Amy Scott, that Reed, Tumer, and Lanier were members of a gang and wore black bandannas to indicate that membership; and FBI Special Agent Rob Corley's testimony that black bandannas are commonly associated with the Folk Nation Gangster Disciples and are used to show membership therein. All of this evidence was relevant to the issue of Lanier's gang membership and was more than sufficient for the jury to have found that Lanier, Tumer, and Reed were fellow gang members. LaFond, 783 F.3d at 1222; Fed. R.

5

Evid. 401. Accordingly, because the evidence was relevant to an issue other than Lanier's character, the probative value of the evidence was not substantially outweighed by its prejudicial effect, and the record contains sufficient evidence to establish that Lanier was in a gang with Tumer and Reed, the district court did not abuse its discretion by admitting evidence of Lanier's gang membership. Alfaro-Moncada, 607 F.3d at 734; Dodds, 347 F.3d at 1323.

We are persuaded, however, by Lanier's argument that the evidence was insufficient to establish that he was guilty of three of the four counts of which he was convicted. Evidence is sufficient to sustain a count of conviction if a reasonable trier of fact could find that the evidence established the defendant's guilt beyond a reasonable doubt. Jiminez, 564 F.3d at 1284-85. It is not enough for a defendant to put forth a reasonable hypothesis of innocence, since the issue is not whether a jury reasonably could have acquitted, but whether it reasonably could have found the defendant guilty. Id. at 1285. This test for sufficiency is the same, regardless of whether the evidence is direct or circumstantial, but where the government relied on circumstantial evidence, "reasonable inferences, not mere speculation, must support the conviction." United States v. Martin, 803 F.3d 581, 587 (11th Cir. 2015) (quotation omitted). Credibility questions are the sole province of the jury. United States v. Schmitz, 634 F.3d 1247, 1269 (11th Cir. 2011). We assume the jury made all credibility choices in support of the verdict. Jiminez, 564 F.3d at 1285.

To prove conspiracy under 18 U.S.C. § 371, the government must show: (1) the existence of an agreement to achieve an unlawful goal; (2) the defendant willingly and knowingly participated in the conspiracy; and (3) the defendant committed an overt act in furtherance of the conspiracy. United States v. Ibarguen-Mosquera, 634 F.3d 1370, 1385 (11th Cir. 2011). A conspiracy may be proven via circumstantial evidence, and the factfinding should not be disturbed if supported by the evidence. Id. The agreement need not have been formal, and proof that the defendant committed an act in furtherance of the conspiracy is the type of circumstantial evidence that can be used to prove the existence of an agreement. United States v. Moore, 525 F.3d 1033, 1040 (11th Cir. 2008). A defendant may be found guilty of conspiracy if he knows of the "essential objective" of the conspiracy, even if he did not know all of the details of the conspiracy or only played a minor role within the scheme. United States v. McNair, 605 F.3d 1152, 1195–96 (11th Cir. 2010). The crux of the agreement element in a conspiracy case is that the government must prove a "meeting of the minds" to achieve the unlawful result. United States v. Arbane, 446 F.3d 1223, 1229 (11th Cir. 2006).

To prove carjacking under 18 U.S.C. § 2119, "the government must prove that the defendant (1) with intent to cause death or serious bodily harm (2) took a motor vehicle (3) that had been transported, shipped or received in interstate or foreign commerce (4) from the person or presence of another (5) by force and violence or

7

intimidation." United States v. Diaz, 248 F.3d 1065, 1096 (11th Cir. 2001) (quoting United States v. Applewhaite, 195 F.3d 679, 684 85 (3rd Cir. 1999)). The "intent" requirement is satisfied when the government proves that the defendant intended to seriously harm or kill the vehicle's driver, at the moment the defendant demanded or took control of the vehicle, in order to steal the car. Holloway v. United States, 526 U.S. 1, 12 (1999).

In Count One, Lanier and co-conspirators Avery Tumer and Timotheous Reed were charged with conspiracy to carjack victim Christopher Gist's vehicle. A thorough review of the record reveals, however, that while there was ample evidence that Lanier conspired to rob Gist of drugs and money, there was insufficient evidence from which a jury could have reasonably inferred that Lanier conspired to take Gist's car. For starters, there was no direct evidence of a conspiracy from Tumer or Reed, since neither testified at trial. The only evidence the government presented in support of the carjacking conspiracy was the testimony of Amy Scott, Tumer's girlfriend. Scott testified that on the night in question, she was driving Tumer, Reed and Lanier in her car. While in the car, Tumer looked through her phone and became jealous upon finding messages between her and Gist; Tumer then sent a Facebook message to Gist to meet up. There was a discussion in Scott's car before the meeting about whether Gist would have money on him because he sold marijuana, and they planned to take Gist's drugs and money, but no one said anything about taking a car

8

from anyone, nor did Scott know anything about Tumer's intentions. Scott, Tumer, Reed, and Lanier drove to a Citgo, met Gist, and drove down a nearby dirt road. Scott then got out of her car and into Gist's; shortly thereafter, the men approached the car and removed Gist from it. All three pointed their guns at Gist, they took his wallet, his phone and a bag of marijuana from him, and Tumer struck Gist's head with a gun. During the attack, Tumer decided to take the car, but Lanier indicated he did not want the car to be taken, and when Tumer told him to drive off in Gist's car, Lanier refused. It surprised Scott when Tumer said he was going to take the car and when Tumer pistol-whipped Gist, because neither had been discussed nor was part of the plan. Afterwards, Scott, Lanier, and Reed got into her car, Tumer got into Gist's car, they returned to an apartment where Scott and Tumer had been staying, and soon thereafter, the police arrived. Scott added that less than an hour before Gist's attack, Scott, Lanier, Reed, and Tumer had planned to rob another drug dealer of drugs and money at his house, which was about a mile away from the Citgo, but when that robbery fell apart the four turned to robbing Gist of his drugs and money.

In other words, Scott's testimony made clear that the plan was to rob Gist of his drugs and money, but that no one had suggested taking the car until Tumer unilaterally decided to do so in the middle of the robbery, at which point Lanier opposed the carjacking. This testimony does not give rise to a reasonable inference

9

that Lanier agreed to take the car, much less that he knowingly and willingly aided in Tumer's theft of the vehicle. Ibarguen-Mosquera, 634 F.3d at 1385. The government says the jury could have inferred that the men made an agreement to take Gist's car in the two minutes after Scott left her car but before the men attacked Gist, but that inference would be purely speculative in light of the evidence. Martin, 803 F.3d at 587. Indeed, none of the men involved in the alleged conspiracy testified at trial. Gist, for his part, testified that no one said they were going to take his car before Tumer did so. Not only did Scott deny that the men talked about a carjacking before the attack, she conveyed that Lanier opposed taking the car, that Tumer decided on his own to take the car and that it surprised her when Tumer said he wanted to take the car because it wasn't part of the plan. She also admitted that Gist was targeted because it was thought he would have drugs and money, which was consistent with their previous plan to rob another individual at a nearby house of drugs and money, again without any mention of a car. Further, the jury watched a video of the post-arrest interview of Lanier by federal investigators, wherein he repeatedly denied having knowledge of any plan to carjack Gist, and relayed both that he'd told the others at the scene to leave the car and that he refused to get into the car. So while the government suggests that Scott simply may not have been aware of the plan, the government did not offer any affirmative evidence that a plan existed, and Scott was there while the plan to rob Gist was formed.

As for the government's claim that the concerted efforts of Lanier, Tumer, and Reed to rob Gist amounted to evidence of their intent to steal his car, the record shows that the men acted in concert in the robbery until Tumer declared his intent to steal the car, at which point Lanier voiced his opposition to Tumer and declined to drive the car away. There was simply no evidence that Lanier actively participated in the carjacking once he knew of Tumer's plan to take the car. Finally, to the extent both Scott and Tumer headed back separately after the attack to the apartment where they had been staying, Scott never testified that they had planned to meet up there, or said anything to this effect.

On this record, it would have been unreasonable for a jury to find that Lanier's coordinated efforts to rob Gist was circumstantial evidence that he had conspired to commit carjacking. Martin, 803 F.3d at 587. While the evidence was sufficient to establish that Lanier conspired to rob Gist and acted in furtherance of the "essential objective" of stealing Gist's money and drugs, Lanier was not being tried for a conspiracy to commit robbery. Instead, Lanier was indicted and convicted of conspiring to steal Gist's vehicle. Because the record does not show that there was an agreement to steal Gist's car, or that Lanier knowingly or willingly committed an overt act in furtherance of that agreement, the evidence could not support a reasonable inference that such an agreement existed. Id.

11

Moreover, because the evidence was insufficient to support the conspiracy conviction on Count One, Lanier's conviction for carjacking in Count Two cannot be sustained as a matter of law.  Pursuant to Pinkerton liability, a defendant may be vicariously liable for the substantive crimes committed by a co-conspirator during and in furtherance of the conspiracy, even if the defendant did not participate in those offenses or have knowledge of them.  United States v. Mothersill, 87 F.3d 1214, 1218 (11th Cir. 1996) (citing Pinkerton, 328 U.S. at 646–47).  Notably, under Pinkerton, a defendant is liable only where the substantive crime was a reasonably foreseeable consequence of the conspiracy alleged in the indictment.  Id.  So even though the evidence indicated that Lanier was part of a conspiracy to rob Gist, Lanier was not alleged to have been part of a conspiracy to commit robbery in the indictment, nor was he convicted of a robbery conspiracy.  See United States v. Madden, 733 F.3d 1314, 1318 (11th Cir. 2013) (holding that a defendant can only be tried and convicted of crimes charged in the indictment).  As a result, the existence of a conspiracy to commit robbery cannot sustain Lanier's conviction for carjacking under a Pinkerton theory of liability.  Id.

Nor could we uphold Lanier's carjacking conviction under a theory of aiding-and-abetting liability.  A defendant is liable as an aider and abettor under 18 U.S.C. § 2 "if (and only if) he (1) takes an affirmative act in furtherance of that offense, (2) with the intent of facilitating the offense's commission."  United States v. Sosa, 777

12

F.3d 1279, 1292 (11th Cir. 2015) (quoting Rosemond v. United States, 572 U.S. 65, 71 (2014)).  For the "affirmative act" requirement, a defendant need only facilitate one component of the offense.  Rosemond, 572 U.S. at 74–75.  "[A] person who actively participates in a criminal scheme knowing its extent and character intends that scheme's commission."  Id. at 77.

The record does not support a finding that Lanier aided and abetted the carjacking.  Aiding and abetting liability attaches where a defendant committed an act in furtherance of the offense "with the intent of facilitating the offense's commission."  Sosa, 777 F.3d at 1292.  While the record supports a finding that Lanier committed an act in furtherance of the carjacking -- insofar as removing Gist from his car helped facilitate that offense -- the record contradicts the notion that Lanier intentionally participated in the robbery in order for Tumer to steal the car.  Rosemond, 572 U.S. at 74–75, 77. Indeed, Scott's surprise and Lanier's opposition to Tumer's decision to take Gist's car undermine an inference that Lanier participated in the robbery knowing the extent of Tumer's plan.  As we've detailed, Scott testified that Lanier objected to the theft of Gist's car and refused to participate in that act, which Lanier's post-arrest interview confirmed.  Gist -- the only other person who was both present during the carjacking and testified at trial -- did not offer any testimony that contradicted Scott's or Lanier's account of the circumstances surrounding the carjacking.  Therefore, because the record could not

13

support a finding that Lanier intended to bring about the carjacking and there is no evidence that Lanier was directly responsible for the theft of Gist's car, we reverse his conviction as to Count Two.  Sosa, 777 F.3d at 1292; Diaz, 248 F.3d at 1096.

Consequently, we also must reverse his conviction in Count Four, for possession of a firearm in furtherance of the carjacking.  Pursuant to 18 U.S.C. § 924(c), it is unlawful for a person to use or carry a firearm during and in relation to any crime of violence or to possess a firearm in furtherance of that crime.  Diaz, 248 F.3d at 1099.  Section 924(c) has two elements: (1) a drug deal or violent crime and (2) the use or carrying of a firearm in connection with that crime.  Rosemond, 572 U.S. at 74.  As applied here, Count Four required the government to show that Lanier used a firearm in furtherance of the carjacking conviction in Count Two, which means that Count Four was necessarily predicated on a finding of guilt as to Count Two.  Because Lanier's carjacking conviction cannot be sustained, his conviction for possession of a firearm in furtherance of the carjacking in Count Four must also be reversed.

We do conclude, however, the record contains sufficient evidence from which a reasonable jury could have found that Lanier, a convicted felon, possessed a firearm on the night of the carjacking.  To prove a violation of 18 U.S.C § 922(g)(1), the government must prove that: (1) the defendant knowingly possessed a firearm; (2) the defendant had previously been convicted of an offense punishable by a term

14

of imprisonment exceeding one year; and (3) the firearm was in or affecting interstate commerce. United States v. Palma, 511 F.3d 1311, 1315 (11th Cir. 2008).

According to the trial testimony, the victim, Gist testified that a person with dreadlocks and wearing clothing matching Lanier's on the night of the robbery brandished a revolver at him. The government produced photos of Lanier from around the time of the robbery that showed that he had dreadlocks, matching Gist's description of one of the men who attacked him. In addition, both Special Agent Corley and Deputy Dustin Turner, of the Lake County Sheriff's Office, confirmed that Gist made a partial identification of Lanier on the night of the carjacking. Amy Scott gave consistent testimony, relating that Lanier, Tumer, and Reed all brought and used guns during the robbery, and they brought the guns back with them to the apartment following the attack. The record also contains evidence establishing a nexus between the gun Lanier allegedly used and interstate commerce, and he stipulated to being a convicted felon. Palma, 511 F.3d at 1315. Because the record contains this evidence, viewed in the light most favorable to the government, from which a reasonable jury could have found that Lanier possessed a firearm, the district court did not err in denying Lanier's motion for a judgment of acquittal with respect to Count Seven. Jiminez, 564 F.3d at 1284–85.

In short, we affirm as to Count Seven, reverse the convictions in Counts One, Two, and Four, and remand for further proceedings. See United States v. Fowler,

749 F.3d 1010, 1016 (11th Cir. 2014) ("On direct appeal, we have routinely, without hesitation and as a matter of course, vacated entire sentences and remanded for resentencing on all surviving counts after vacating a conviction or sentence on some, but not all, of the counts.").[2]

**AFFIRMED IN PART, REVERSED IN PART, AND VACATED AND REMANDED.**

---

[2] As for his challenge to the jury instructions, Lanier must show that the district court plainly erred because his argument against the instruction on appeal -- that the carjacking was not a reasonably foreseeable outcome of the conspiracy to rob Gist -- differs from his objection in the district court that Pinkerton liability negated the intent and willfulness requirements of the offense. But in any event, we need not address that issue because we are reversing Lanier's conviction for carjacking, rendering any discussion of the propriety of the Pinkerton jury instruction moot.